# CASES DETERMINED

## IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE AUGUST TERM THEREOF, HELD AT CHARLES-
TOWN, IN THE COUNTY OF JEFFERSON, COM-
MENCING ON THE FIRST DAY OF AUGUST,
1877, AND ENDING ON THE TENTH
DAY OF SEPTEMBER, 1877.

LUCAS, JR. *v.* LOCKE, *et al.*

(Absent, GREEN, PRESIDENT).

Decided September 10, 1877.

1. A new trial will not be granted on the ground of after-discovered
evidence, where the evidence is such as by the use of reason-
able diligence might have been discovered before the former
trial.

2. Neither will a new trial be granted on such ground, unless
in the opinion of the Court such after-discovered evidence,
if before the jury, ought to produce a different verdict.

| 11 | 81 |
| 41 | 781 |
| 11 | 81 |
| 46 | 234 |
| 11 | 81 |
| 56 | 396 |
| 11 | 81 |
| 62 | 499 |

1877.
August Term.

3. A sheriff and his sureties are liable for the acts of such sheriff done *colore officii*

4. A sheriff and his sureties are liable for the acts of the deputy of such sheriff done *colore officii.*

5. A deputy and his sureties are liable to the sheriff for the acts of the deputy done *colore officii.*

6. L. is sheriff of the county of J., and appoints C. his deputy who gives the usual bond ; C. takes possession of the estate of Little, within the district of C. in said county, and administers on said estate in the name of L. administrator *de bonis non* of Little, collects debts due the estate and pays claims against the estate, consents to an order in a chancery suit against L. as administrator *de bonis non*, of said estate which recites the fact that L. was appointed such administrator *de bonis non*; a settlement is made in said suit of the accounts between such administrator *de bonis non* and said estate, and a decree in said suit rendered against such sheriff as such administrator &c., for a sum of money, which on execution issued under said decree the sheriff pays, the sheriff then brings a suit at law against his deputy and his sureties on his bond to recover the amount so paid, the deputy having collected the money from the estate, and being in default, and there appears no order on the proper record showing the estate had been in fact committed to said sheriff. HELD :

That the acts of the deputy under the circumstances in administering on said estate were done *colore officii*, and the deputy and his sureties are liable to the sheriff for the default.

, This was a writ of error and *supersedeas* to a judgment of the circuit court of Jefferson county, entered on the 17th day of November 1874, setting aside a verdict of a jury rendered theretofore against the defendant John J. Locke, and granting him a new trial in a case then pending in said court, in which Robert Lucas, Jr., was plaintiff, and John J. Locke and others were defendants.

The writ of error was allowed upon the petition of the plaintiff.

The Hon. John Blair Hoge, Judge of the third judicial circuit, presided below.

JOHNSON JUDGE, who delivered the opinion of the Court, states the case as follows :

Robert Lucas, Jr., was elected sheriff of Jefferson county for the term of two years, commencing January 1, 1857, and ending January 1, 1859. He appointed one James W. Campbell his deputy, and assigned to him a district specifically described by metes and bounds in the official bond executed by said deputy. This bond was executed in the penalty of $40,000.00 by said Campbell as principal and by certain sureties, of whom said John J. Locke, Isaac N. Carter, Joseph Myers and Francis W. Drew were the survivors when this suit in debt was brought, to March rules 1872, in the name of said Lucas, on said bond against said surviving obligors.

The office judgment was set aside at the April term 1872, by the pleas of *nil debit* and the statute of limitations, entered apparently in behalf of all the defendants. At a subsequent term however continued and held on the 29th day of October 1874, John J. Locke, by leave of court, severed in his defense, demurred to the declaration and to each count, withdrew on his own behalf the pleas of *nil debit* and limitations theretofore entered, filed three special pleas, and the pleas "conditions performed and conditions not broken." The court overruled the demurrer, and the plaintiff replied generally to the pleas, and issues were joined, and on the day last mentioned, October 29, 1874, the case was submitted to the jury, who on the 31st of the same month, rendered their verdict for the plaintiff in the sum of $146.84.

The first of the special pleas averred that J. W. Campbell, deputy of Robert Lucas, Jr., was not a party to the chancery suit in the declaration mentioned, and had no notice of the pendency of the same, and at no time and in no manner was called upon or had the opportunity to defend himself as to his accounts and administration of the estate of Geo. Little, deceased.

The second plea averred, that said decree was obtained against plaintiff by his own negligence.

The third plea averred, that after the estate of Geo. Little, deceased, was committed to the sheriff, at no time

were there assets in the hands of said deputy applicable by law to the payment of the debt due by said estate to Rezin E. Simpson, use of Glenn & Campbell.

To each of these pleas there was a general replication. The claim in the declaration was that, the estate of Geo. Little, deceased, was committed to the hands of the plaintiff, sheriff of Jefferson county, who thus became the administrator *de bonis non*, of Geo. Little, deceased; that said estate of Geo. Little was indebted to Rezin E. Simpson, for the use of Glenn & Campbell; that the estate thus committed to the sheriff was situated within the district of the deputy, James W. Campbell, who took charge of the said estate and collected the rents and profits &c., and that a decree was rendered against said Lucas, administrator *de bonis non* of said Little, in a chancery suit wherein Leonard Sadler was plaintiff, and said Lucas, administrator *de bonis non*, &c., and others were defendants, on which decree an execution issued in favor of Rezin E. Simpson, use of Glenn & Campbell, against said Lucas, administrator &c., which he was compelled to pay. The evidence is set out entire in the record, and there was certainly sufficient to satisfy the jury of the truth of every material allegation in the declaration. It appeared that an order was entered in said chancery suit, with an endorsement proved to be in the handwriting of said James W. Campbell, which is as follows:

"It being suggested to the court that John Avis, administrator *de bonis non* with the will annexed of George Little, deceased, has been removed from his office, and the estate committed to Robert Lucas, sheriff of Jefferson county, it is ordered that this cause be revived, by consent, against Robert Lucas, the said sheriff, committee administrator *de bonis non* with the will annexed of George Little, and by like consent and with the consent of the said sheriff, committee administrator *de bonis non* with the will annexed of George Little, it is ordered that commissioner Samuel Stone, do settle the ac-

counts of said sheriff, committee administrator *de bonis non* with the will annexed of George Little, and report his proceeding here to this court."

Upon which decree at its foot was the following endorsement:

"I assent to the entering of the above decree.

(Signed) JAMES W. CAMPBELL, *D. S.*

*for R. Lucas, Jr.*"

This order is a part of the evidence in the case.

The defendant moved the court to set aside the verdict and grant him a new trial on the ground of after-discovered evidence, and supported his motion with the following affidavit with jurat attached :

"John J. Lock maketh oath and says, that up to the time of the trial of this case he had no knowledge or means of knowing whether the estate of George Little, deceased, was committed to Robert Lucas, late sheriff of Jefferson county, during the period between January 1, 1857, and January 1, 1859, and that not until the development of the arguments made before the jury had he even a suspicion that the said estate had not been so committed, and being then for the first time put upon his inquiry, he immediately caused a search to be made for the order committing the said estate to the said Lucas, the result of which search, made in the clerk's office of this court and that of the county court, reveals the fact that during the time mentioned above no such commitment was ever made, as will appear by the certificates of F. P. Lynch, deputy clerk of this court, and by Thomas A. Moore, clerk of the county court of this county, which certificates are hereto appended."

The certificates referred to in the foregoing affidavit appear in the record.

On the 17th day of November, 1874, on the defendant's said motion, the court set aside the verdict of the jury and granted a new trial.

This suit was brought against John J. Locke, Isaac N. Carter, Joseph Myers and Francis W. Drew. It ap-

pears from the record that Isaac N. Carter was a non-resident, and that the death of Joseph Myers was suggested, and John J. Locke had demanded and received a separate trial; a trial was also had as to the only remaining resident defendant, Francis W. Drew, and the jury found against him a verdict for the same sum as was found against the defendant, Locke, in the trial of his case; no judgment was entered upon this verdict, as the verdict in the case against Locke was set aside.

It was clearly shown to the jury in the trial of the case against Locke, that the estate of George Little, deceased, was in the district of James W. Campbell, the deputy of Robert Lucas, Jr., sheriff of Jefferson county, and that said Campbell in his capacity as deputy sheriff did administer on said estate, and that a settlement was made in the chancery suit referred to, in which an account was taken between Robert Lucas, Jr., administrator *de bonis non*, of George Little, deceased, and said estate with the knowledge of said Campbell as his consent to the decree in that cause shows.

To the judgment of the court in setting aside the verdict against Locke, and granting him a new trial, the plaintiff obtained a writ of error.

*David B. Lucas*, for plaintiff below and plaintiff in error, referrred the Court to the following authorities:

*Mosby* v. *Mosby*, 9 Gratt. 584; *County Justices* v. *Pulkerson*, 21 Gratt. 182; *Sangster* v. *Commonwealth*, 17 Gratt. 131; 8 Gratt. 278; 4 H. & M. 369; 6 Rand. 142; 4 Call 459; Code of W. Va., p. 542, §4.

*Andrew Hunter* and *Andrew E. Kennedy*, for defendant Locke, the defendant in error.

JOHNSON, JUDGE:

The writ of error in this case was obtained under the provision of section 1, chapter 16, of the acts of 1872-3, which allows a writ of error to the judgment of

the court in setting aside a verdict and granting a new trial, without waiting for the new trial to be had.

No other ground for setting aside the verdict and granting the new trial, was made the basis of the motion in the court below, other than that disclosed in the affidavit, of after-discovered evidence. Notwithstanding this fact, if it appear from an inspection of the bill of exceptions made part of the record, and which sets forth all the evidence, the evidence was plainly insufficient to sustain the verdict; it was properly set aside, although the motion for the new trial was based solely on the one ground. *Shrewsbury* v. *Miller et al.*, 10 W. Va., 115. From the whole evidence it can not be said there was not ample evidence to sustain the verdict of the jury; it is not contended here that there was not.

But it is insisted by the learned counsel for the defendant in error, that the real party as plaintiff was not before the court; that the affidavit discloses the fact that there was no order committing the estate of Robert Little to the plaintiff, as sheriff of Jefferson county. Was not this matter among others in issue between the parties? and was there not sufficient evidence before the jury to authorize them to infer this fact?

There was no objection to any of the evidence introduced to the jury, and from what they had they might well infer that said estate was in fact committed to the said sheriff. It is now insisted that the fact was otherwise. If so why was it not so shown to the jury? Even if it appeared that the wrong man was plaintiff, would it not have been proper to have proved that fact to defeat the plaintiff's action? What is the difference between the wrong man being plaintiff, and the right man bringing the wrong action, an action on which he had no right at all at law to recover? In either case it would be the duty of the defendant to prove the fact before the jury, and such proof would entitle him to defeat the plaintiff's action.

I see no reason to take this case out of the general

rule applicable to motions for a new trial on the ground of after-discovered evidence. In *Brown* v. *Speyers*, 20 Gratt., 308, Judge Staples says: "It is an established rule of the court to grant new trials very rarely upon the ground of after-discovered evidence, and never but under very special circumstances. The party must show he was ignorant of the existence of the evidence, and it must be such as reasonable diligence on his part could not have secured on the former trial," &c. We can adopt his language further and say, "to grant a new trial under the circumstances here disclosed is to violate well settled principles of law; to offer premiums to negligent suitors to omit the exercise of proper diligence in preparing for the trial of cases." Were the rule to be relaxed and sureties not required to exercise diligence in looking up their testimony, and affidavits after verdict, that the party had just then discovered material evidence, of which they were before ignorant, were to be regarded as sufficient to justify the court in granting new trials, it would be almost impossible to terminate litigation. In this case the affidavit does not disclose the slightest diligence on the part of the defendant in error. The evidence he deems so material was on the records of the courts. He does not say that he made any search for it at all. The reasonable inference is that he supposed that the records would show that the order committing the estate to the sheriff was on the records. His thinking so, would not excuse him for his negligence in omitting to examine the records until after the verdict was rendered. It would be unsafe and dangerous to set aside verdicts under circumstance like those here disclosed.

It is regarded as essential to the success of a motion for a new trial on the ground of after-discovered evidence, that the testimony will in the opinion of the court, if a new trial is had, substantially change the verdict. The new evidence must be material and of a decisive character, and such as to induce belief that injustice has been done, and on a new trial ought to change the

result. Do the facts set out in the affidavit, and the certificates there referred to, show that the failure of the defendant to produce the records before the jury showing that no order was entered, committing the estate of Geo. Little, deceased, to Robert Lucas, Jr., sheriff of Jefferson county, had done injustice to the defendant in the trial, and that if such records were before the jury in a new trial, a different verdict ought to be rendered?

This presents the question, whether the sureties of an officer on his bond are responsible for such of his acts *only* as are done *virtute officii*, or whether they are also responsible for such as are done *colore officii*. If the sureties of Robert Lucas, Jr., would be responsible for his acts done *colore officii*, then the sureties of the deputy would be responsible for similar acts.

On the common law principles governing the ordinary relation of principal and agent, the sheriff would not be responsible for an act done by his deputy *colore officii*; but on principles of public policy applying to the relation of a sheriff and his deputy, the former is liable in such a case; on the same principles it would seem that he and his sureties are liable on his official bond. *Sangster et al.* v. *The Commonwealth*, 17 Gratt. 131. It has been well settled that the sureties of a sheriff are responsible for his trespass in seizing and selling the goods of B. on an execution or attachment against A. 17 Gratt., *supra* and cases there cited. And it is just as well settled, if the deputy of the sheriff does such an act, the sheriff is liable therefor.

In *James* v. *McCubbin*, 2 Call., 273, a deputy drove one man's property on the land of another, in order that he might levy a distress warrant on it, which he did. Trespass *vi et armis* was brought against the sheriff therefor, and was unanimously sustained by the court. What more willful and unauthorized act than this could have been done by a deputy? In *Mosby's adm'r et al* v. *Mosby's adm'r.*, Judge Moncure says with reference to that case: "There is another principle on which I think

12

Miller is liable for the rents received by his deputies, and that is, that a sheriff is held *civiliter*, though not *criminaliter*, for all the acts of his deputies *colore officii."* And the same learned Judge, in the case before cited of *Sangster et al* v. *The Commonwealth* says : " There is no proposition better settled, and especially in this state, than that a sheriff is liable *civiliter*, though not *criminaliter*, for all the acts of his deputies *colore officii*, and is liable therefor in the same form of action as if they had been actually committed by himself ; and consequently, that he is liable in an action of trespass *vi et armis* for the act of his deputy in taking the goods of A. under an execution against B. It seems to result necessarily from that proposition, that the sheriff is not only personally liable in such a case, but he and his sureties are liable on his official bond. He is liable for his deputy, because the act of the latter is done under color of the office of sheriff, and is thus a *quasi* official act. Certainly the deputy and his sureties in his bond to the sheriff for the faithful discharge of the duties of his office of deputy, would be liable in an action on that bond to the sheriff, to recover damages sustained by the latter from such an act of the former."

It has often been held, if a sheriff commits a trespass under color of a void writ, or a writ which is *functus officio*, he and his sureties are liable for such trespass ; and, so he would be for a similar trespass under like circumstances committed by his deputy ; and in the latter case, the deputy and his sureties on his bond would be liable to the sheriff.

In *Knowlton* v. *Bartlett*, 1 Pick. 273, the court says : "If the act from which the injury resulted was an official act, the authorities are clear that the sheriff is answerable ; if it was not an official but a personal act, it is equally clear that he is not answerable. But an official act does not mean what the deputy might lawfully do in the execution of his office ; if so, no action would ever lie against the sheriff for the misconduct of his deputy.

It means, therefore, whatever is done under color or by virtue of his office. In the present case the deputy had a writ of attachment, and was directed to attach a particular parcel of real estate, which he did. It is said that the writ was then *functus officio.* It may be true that nothing more could *legally* be done under it; but the question is whether the subsequent receiving of the money was not under color of office? If the plaintiff had given the money to prevent the service of the writ, the deputy in receiving it would have acted merely as an agent. Here he undertook to make an attachment of the money. There is no doubt that he proposed *to act as an officer and that he made the plaintiff believe he was so acting."* To hold a deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy is acting under color of some writ, but if he is acting under color of his office, and professing so to act and inducing others interested to believe he is acting *colore officii,* he and his sureties will be bound for such acts. No other rule would be safe. Sureties are not needed on sheriffs bonds, if he is only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damages he may cause to any one while acting under color of his office. And if the sheriff and his sureties are bound for such acts of the deputy while acting under color of his office, then the deputy and his sureties are liable to the sheriff for such act.

The statute in force at the time the deputy administered on the estate of George Little, is as follows: "If at any time three months elapse without there being an executor or administrator of the estate of a decedent, (except during a contest about the decedent's will, or during the infancy or absence of the executor), the court in which the will was admitted to record, or which has jurisdiction to grant administration on the decedent's estate, shall on the motion of any person order the sheriff or other officer of the county or corporation to

1877.
August Term.

Lucas
v.
Locke *et al.*

1877.
August Term.

Lucas
v.
Locke et al.

take into his possession the estate of such decedent and administer the same; whereupon such sheriff or other officer without taking any other oath of office or giving any other bond or security than he may have before taken or given, shall be the administrator, or administrator *de bonis non*, of the decedent with his will annexed, if there be a will, and shall be thenceforward entitled to all the rights and bound to perform all the duties of such administrator. The court may however at any time afterwards revoke such order, and allow any other person to qualify as executor or administrator. Code of 1860, page 596.

The question in this case is then reduced to this: "Was Jas. W. Campbell, deputy for Robert Lucas, Jr., sheriff of Jefferson county, while administering on the estate of Geo. Little, deceased, acting *colore officii*? We think he undoubtedly was. He collected the assets of the estate in the name of the sheriff as administrator *de bonis non* of said estate; he paid debts as such; it is presumed he caused the settlement in the chancery suit to be made between Robert Lucas, Jr. administrator *de bonis non* of said Little and said estate; he held himself out to all interested in said estate, that he was acting for the sheriff as administrator *de bonis non* of said estate; he stood by after consenting to the decree being entered in the chancery suit, which admitted clearly and explicitly that said estate was committed to said Robert Lucas, Jr., sheriff of Jefferson county, and saw a final decree entered against the said sheriff for his (Campbell's) default, which sum so decreed the sheriff was compelled to pay.

Everybody was bound to take knowledge of the statute under which an estate might have been committed to the sheriff. In this case everything was done by the deputy in administering the estate, that could or would have been done, had the order actually been made committing the estate to the sheriff to be by him administered; he evidently supposed such order had actually been made; the defendant, Locke, in his affidavit

says : "Not until the developement of the arguments made before the jury had he even a suspicion that the estate had not been so committed," and up to that time supposed the order had been in fact made, and unless he could defend himself on some other ground he would be held liable ; but now he suddenly discovers that the record does not show such an order was made, and he considers himself a much injured man. How is he injured any more than if the order had in fact been made? It would certainly be a great hardship on the sheriff under all the circumstances of this case to hold that the deputy and his sureties are not liable. If all the deputy did in the premises while administering on said estate did not show he was acting *colore officii,* it is difficult to understand what would prove he was so acting. If therefore a new trial had been had, the evidence set forth in defendant's affidavit, if produced to the jury, ought not to have changed the verdict; and for that reason the new trial was improperly granted.

For the foregoing reasons the judgment of the circuit court of Jefferson county rendered in this case on the 17th day of November, 1874, is reversed with costs to the plaintiff in error. And it appearing from the record, that a verdict was also rendered against Francis W. Drew, the only remaining defendant to the action who was before the court, for the same amount of money as was ascertained by the jury in their verdict against Locke, this Court proceeding to render such judgment on the said verdict as the court below should have rendered, it is considered by the Court, that the plaintiff, Robert Lucas Jr., recover of the defendants, John J. Locke and Francis W. Drew, $146.84, with interest thereon from the 2d day of November, 1874, and his costs by him about this suit expended.

JUDGMENT REVERSED.