# CHARLESTON.

STATE v. MANKIN, COMMITTEE, *et als.*

Submitted March 22, 1910.    Decided March 7, 1911.

1.  SHERIFFS AND CONSTABLES—*Liability on Official Bond.*
    To make the sureties in his official bond liable for personal injury or wrongful death, inflicted by him in making an arrest, a constable must act under a warrant or other writ calling into execution his official powers in the particular case, or he must act under a claim that an offense has been committed in his presence, based upon conduct giving color to such claim, or calling for judgment and opinion as to whether an offense has been so committed. That he is an officer and professes to·act in his official capacity are not sufficient to impose liability upon the sureties.

2.  OFFICERS—*Acts Under Color of Authority—"Colore Officii."*
    An act done *colore officii* is an act done, not only by an officer, professing to act as such, but also under color of authority to act in and about the particular matter in connection with which it was done.

3.  APPEAL AND ERROR—*Review—Order Overruling Demurrer.*
    If a defendant's demurrer to evidence is well taken and sustained, and, upon a writ of error obtained by the plaintiff, the defendant cross-assigns, as error, the overruling of his demurrer to the declaration, the judgment will be affirmed without in-

auiry as to the sufficiency of the declaration, the cross-assign-ment of error being regarded as conditional only.

(BRANNON, JUDGE, absent.)

Error to Circuit Court, Raleigh County.

Action by the State, for the use of John W. Ball, administrator of John Lewis, against Crockett Mankin; committee, etc., and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*A. A. Lilly* and *File & File,* for plaintiff in error.

*McGinnis & Hatcher,* for defendant in error McDonald.

POFFENBARGER, JUDGE:

John W. Ball, administrator of the estate of John Lewis, deceased, brought this action in the name of the state, on a bond given by Lantie Stover, as constable of a certain district in Raleigh county, to recover damages for the wrongful death of his decedent. Stover, after having qualified and given bond as constable and entered upon the duties of his office, fatally injured Lewis by a blow inflicted upon his head with a pistol, and the purpose of this action is to hold the sureties in the official bond liable. A demurrer to the declaration and each count thereof having been overruled, the evidence was introduced and a demurrer to it interposed, which the court sustained and rendered a judgment for the defendant. The plaintiff assigns, as error, the sustaining of the demurrer to the evidence and the defendant cross-assigns error in the overruling of the demurrer to the declaration.

If the ruling on the demurrer to the evidence is correct, it will be unnecessary to consider the demurrer to the declaration. A joinder in demurrer to evidence virtually effects an agreement as to facts. By it, the case is withdrawn from the jury and submitted to the court for inquiry whether there is sufficient evidence to sustain a verdict, if one has been found by the jury. Nothing to the contrary being shown, the evidence embodied in the demurrer is presumptively all the plaintiff has or could adduce. If he had other evidence which he desired to introduce, before finally and forever submitting the case, it is presumed he would have asked for a non-suit, to enable him to introduce

it on a subsequent trial. If the declaration be insufficient and the defendant has demurred to it, the benefit of that demurrer ought to be saved to him, for he is in no way responsible for the defect in the pleading. Even if the evidence be sufficient, he is entitled to a good declaration also, and may successfully resist a judgment upon a bad one. There are decisions which say a demurrer to evidence does not reach the defect in the declaration, and in this we fully concur; for a demurrer to evidence is not a demurrer to the declaration. But if the defendant has demurred to the declaration and also to the evidence, we know of no principle, reason or decision that says his demurrer to the evidence nullifies his demurrer to the declaration or renders it inoperative or ineffectual. Accordingly, it has been held that a defendant who has demurred to the evidence may assign, as error, in the appellate court, the overruling of his demurrer to the declaration. *Quarrier* v. *Insurance Cos.,* 10 W. Va. 507; *Bank* v. *Smith,* 11 Wheat. (U. S.) 171; *McLean* v. *Life Assurance Soc.,* 100 Ind. 127; *Fish* v. *Van Cannon,* 94 Ind. 263. If, however, the evidence is insufficient, the defendants have no occasion or reason for insisting upon their demurrer to the declaration. Their complaint, respecting the action on that demurrer, is intended to prevent judgment in the event of the failure of their demurrer to the evidence. It cannot be supposed that, having the benefit of a judgment upon the merits, as shown by the evidence adduced, they desire to re-open the case for the purpose of correcting a mere technical error relating to the pleadings, entirely harmless as to them. We must suppose their assignments of error were made to subserve their purpose and protect their interests, not those of their adversary. If the plaintiff could assign, as ground of error against him, any defect in his own declaration, or claim the benefit of the defendants' assignment thereof, he has not done so. Hence, if we find the rulings of the court upon the demurrer to the evidence correct, we need not enter upon any inquiry as to the sufficiency of the declaration, since that question has been raised only conditionally by the defendant and not at all by the plaintiff.

The official position of Stover, the execution of the bond and the killing of Lewis by him are all established by the evidence. But this is not enough to fix liability upon the sureties in his

bond. Their liability is measured and limited by their contract. They did not bind themselves to responsibility for all the acts of their principal, done within the period of his official term, nor as to all acts for which he might become personally liable. After the execution of that bond, he could have incurred many liabilities, lying wholly outside of, and beyond, its scope, marking the limits of liability on the part of the sureties. Their contract has been held to be *strictissima juris.* State v. *Barnes,* 52 W. Va. 85; *State* v. *Nutter,* 44 W. Va. 385; *State* v. *Enslow,* 41 W. Va. 744. The condition of the bond was that Stover should faithfully discharge the duties of the office of constable and account for and pay over all moneys that might come into his hands by virtue of his office. The sureties are liable for wrongful acts of their principal within the scope of this condition, as it has been judicially defined. If the authorities were in accord and agreement as to its scope, the determination of the question of liability here would be free from difficulty; but, unfortunately, they are somewhat conflicting and inconsistent, some holding the sureties liable only for acts done by virtue of the principal's office, and others for acts done by virtue of his office and also acts done under color of his office, and there is some difference of opinion as to what constitutes an act done by virtue of office and one done by color of office.

Liability in respect to an act, done by virtue of office, logically excludes any defect of authority or departure from the line of official duty, up to the point of the fixing of the liability. Such a liability is one founded upon authoritative and proper action. After the liability has been so fixed, the breach of duty consists of failure to discharge it. Thus an officer collects money under a valid execution, or takes property under a valid attachment, or arrests a fraudulent debtor under a valid writ, and then fails to pay over the money or negligenty or wrongfully loses the property, or allows the debtor to escape. In all these cases, the liability is incurred by conduct strictly and wholly within the line of official duty. The acts which fix it are done *virtute afficii.* The right of action is conferred by failure of the officer to discharge a liability that has been legally and validly fixed upon him. On the other hand, if an officer, armed with a valid writ, authorizing him to levy it upon the

property of A, by mistake or with wrongful intent, takes the property of B under it, he departs from the mandate of the writ and from the line of his duty, although he apparently and professedly acts not only as an officer, but also under a writ, requiring or authorizing the exercise of his official powers in the particular case. Again, if an officer, having authority to execute warrants of arrest, makes an arrest under a valid warrant, and, in doing so, needlessly inflicts violence upon the person of the prisoner, or in any way does him needless personal injury, his acts in excess of his legal authority and power, are acts done *colore officii,* not merely because they were done by an officer, but because they were done by an officer holding a writ, authorizing him to do certain things, and under which he wrongfully did other things, claiming authority under the writ to do them. Here the wrongful acts done under color as well as claim of authority, impose the liability. All these cases involve something more than the mere official position of the actor and his claim of official action. He has a writ which authorizes him to collect money or levy on property or arrest some person. This writ authorizes and causes exercise of official power. Thus set in motion, that power extends beyond the authority conferred, under a mistaken claim, on the part of the officer as to the extent of his power in the particular case. It seems to me this is the circumstance which gives the wrongful act an official color, on the same principle by which a void deed constitutes color of title. Without a paper in the form of a deed or some other muniment of title, there can be no such thing as color of title. Without some sort of a writ or the equivalent thereof, either actually or ostensibly calling for the exercise of official power, it is difficult to see how an act, though done by an officer under a claim of authority, can be regarded or treated as one done under color of office. I think color of office means color of official authority. Under our statutes, conservators of the peace, including constables, may make arrests without warrants for offenses committed in their presence, but they have no authority, nor color of authority, to make arrests at all otherwise than under warrants or for offenses committed in their presence. Though there is some conflict of authority as to the proposition, it seems clear that a defective warrant

gives color of official action, just as a void deed gives color of title. On the same principle, an act done in the presence of an officer, not amounting to an offense, but which he may honestly believe to be an offense, ought to give him color of authority to make an arrest. But, if he assumes to make an arrest without a warrant or writ of any kind, and, in the absence of any conduct in his presence that might honestly be construed by him to be an offense, it seems clear that he acts without even color of authority.

This Court seems to have gone somewhat beyond this view in *Lucas* v. *Locke,* 11 W. Va. 81. In that case, Judge JOHNSON said: "To hold a deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy is acting under color of some writ, but if he is acting under color of his office, and professing so to act and inducing others interested to believe he is acting *colore officii,* he and his deputies will be bound for such act. No other rule would be safe. Sureties are not needed on sheriff's bonds, if he is only to be held when he acts legally." That was a case in which a deputy sheriff had administered upon the estate of a decedent, and the sheriff, after having settled with the estate, had sued the deputy and his sureties on the bond of the former. Both the sheriff and the deputy had assumed the existence of an order of the county court casting the administration of the estate upon the former. after all this had been done, it was discovered that no such order had ever been made. Under the view of the law as above stated, the sureties on the bond were held liable. If this is a sound legal proposition, sureties must answer in every instance in which their principal professes to act officially in respect to a matter, concerning which he could have been called upon so to act, but was not either actually or ostensibly. It is in direct conflict with *State* v. *Enslow,* 41 W. Va. 744, though it is not referred to in the opinion in that case. A statute authorized the defendant to pay money into court to the clerk. A sum of money had been paid to the clerk in vacation. He failed to pay it to the plaintiff. No order had been made in the case for payment to the clerk. In an action by the plaintiff upon the clerk's bond, this Court held the surety not liable for the money. This was cited with approval and followed in *State* v. *Barnes,*

52 W. Va. 85, in which an effort was made to hold the sureties on a constable's bond for the amount of certain tax bills and officer's·fee bills. It was admitted by this Court that the constable, under certain circumstances, could have become liable in respect to these claims, but the sureties were relieved because those particular circumtances, which would have imposed liability, had not been either actually or colorably established by the evidence. In view of this conflict, we adopt the rule of the later cases which, in our opinion, is more nearly in agreement with reason and legal principles. The doctrine of color of office, as applied in *Lucas* v. *Locke,* is extended far beyond any precedents referred to in the opinion in that case. In every one of the cases there cited, the officer had proceeded under a writ, calling for action on his part in the particular case. The suggestion in the opinion that the bond would be useless, if it did not cover every act done by the principal under a claim of authority, acquiesced in by the injured party, is not well founded. We have here indicated many instances in which the sureties can be held for acts done *virtute officii* and acts done *colore officii,* without extending the liability to acts done under a mere bald groundless claim of authority, such as that of the constable in this case, as disclosed by the evidence.

The principal in this bond may have acted under official color, as herein defined, but the evidence does not show it. If he had any warrant for the arrest of the son of the decedent, that fact is not shown. If the wife of the deceased who was also seized, had done anything in the presence of the officer, which he could have regarded as an offense, the evidence does not show that. All that is shown is that she called upon, or attempted to call upon, another constable to arrest the brother of Stover, the principal in the bond. This constituted no basis for a claim on his part that she had committed an offense in his presence. It is not pretended that John Lewis, plaintiff's decedent, had committed any offense, or that he was arrested, or that the officer held· any warrant for his arrest. Nor can it be reasonably assumed that he was interfering with the exercise of the officer's official power, in arresting the son or the wife, for we have just stated that Stover was not acting officially or under color of his office. One witness says Mrs. Lewis· struck Stover,

but that was after he had illegally seized and beaten her. Some evidence was excluded, but none showing Stover had a warrant or constituting ground for a claim that an offense had been committed in his presence.

Finding the judgment free from error, we affirm it.

*Affirmed.*