13191

BROOKS *ET AL.* v. UNITED STATES FIDELITY & GUARANTY COMPANY

(159 S. E., 488)

Messrs. *Phil D. Huff, O. L. Long* and *Sloan & Sloan,* for appellants,

Messrs. *R. E. Babb* and *Roger M. Heyward,* for respondent,

July 2, 1931.

The opinion of the Court was delivered by MR. JUSTICE. BONHAM.

For many years O. G. Thompson, an honored and respected citizen of the County of Laurens, held the office of Judge of Probate, until, because of the infirmities of old age, he declined re-election in 1930. Upon qualifying as Judge of Probate in 1927, he appointed his son, J. M. Thompson, to be clerk of the said Court, and took from him a bond unto "O. G. Thompson, Judge of Probate for Laurens County," with United States Fidelity & Guaranty Company of Baltimore, Md., as surety. The condition of the bond was that "the said J. M. Thompson shall well and truly perform the duties of the office as required by law."

The complaint in the present action is brought by the plaintiff as guardian, in behalf of her wards, and all others having claims "against the defendants herein on account of the acts and doings of O. G. Thompson, Probate Judge of Laurens County, and of his Clerk, J. M. Thompson, described here." The specific claim of the plaintiff on behalf of her wards is that J. M. Thompson, while acting as Clerk to the Probate Judge, appointed himself guardian of the estate of the minors, Helen and Herbert Stone, and gave a worthless bond as such guardian; that he possessed himself of the estate of these minors, and it has been lost to them through his appropriation of it to his own uses. It is further alleged that he performed virtually all of the duties of the Judge of Probate, and while so acting as Clerk of that Court he committed other acts of misappropriation for which claims have been filed against his estate. He died in 1929, intestate. The complaint alleges that the aforesaid acts of J. M. Thompson constitute a breach of his bond to O. G. Thompson, and J. M. Thompson and his bondsmen are liable to the plaintiff for the penal amount of said bond; and that said bond, though given to O. G. Thompson as Judge of Probate, is a *quasi*-official bond, and was actually given for the protection of the general public having business in said office, and inures to the benefit of the plaintiffs.

O. G. Thompson and his surety on his official bond are not made parties to the action, and recovery is sought only from the United States Fidelity & Guaranty Company as surety on the bond of J. M. Thompson to O. G. Thompson.

The defendant demurred to the complaint, for that it does not state facts sufficient to constitute a cause of action; because whatever right of action accrued on the bond of J. M. Thompson to O. G. Thompson only was to O. G. Thompson, not to the plaintiff or to the public generally; that there is no privity of contract between the plaintiff, or any other of the public, and this defendant, as its principal, and no consideration moving to support such a contract; that there are no acts of misfeasance, nonfeasance, or malfeasance charged on the part of J. M. Thompson as Clerk of the Probate Court, whereby any alleged injury has resulted to any person.

The demurrer was heard by Judge Mauldin, who, by his order of date December 11, 1930, sustained the demurrer upon the ground that the duties of the Clerk of the Probate Court are prescribed by Statute; the bond covered the faithful discharge of these duties; that the wrongs charged to J. M. Thompson were without the scope of these duties; that they were *ultra vires;* were not within the contemplation of the obligation assumed by the surety, and not covered by the contract of suretyship.

The appeal is from this order.

The exceptions by plaintiff allege error on the part of his Honor, the Circuit Judge, in holding: That Sections 164 and 165, Vol. 1, Code 1922, limited and fixed the duties of J. M. Thompson as Clerk; that he erred in holding that the acts complained of were *ultra vires* and not in contemplation of the obligation assumed by respondent, and not covered by the contract of suretyship; that he should have held that the acts complained of were within the color of the office of the said J. M. Thompson, and that the respondent was liable therefor.

The respondent gave notice that it would ask that the order sustaining the demurrer be affirmed on the additional grounds: That O. G. Thompson is the obligee in the bond upon which the defendant is surety and any right of action or liability under the bond would accrue to O. G. Thompson, and not to the plaintiff, nor to the public; that the main purpose of the bond is to indemnify and save harmless O. G. Thompson, and is a contract between the parties thereto, to which plaintiff nor any other of the public is a party; and there is no privity of contract between plaintiff, nor any other of the public, and the defendant; and there is no consideration moving to support such contract.

His Honor, the Circuit Judge, in his order sustaining the demurrer to the complaint, when he said that Sections 164 and 165, Vol. 1, Code 1922, prescribed the duties of the Clerk of Probate Court, evidently did not intend to say that those sections limited the clerical functions of such Clerk, but that they prescribed the nature of such duties.

His Honor was correct in holding that the things charged in the complaint in this case against J. M. Thompson were without the scope of the duties of the Clerk of the Probate Court.

Counsel for appellant with zeal and ability argue that the surety on the Clerk's bond is liable in this action for the reason that the acts of which the Clerk is guilty were done *colore officii*. They frankly say: "It is conceded that the acts complained of would not be by *virtute officii,* as provided by the Statutes. However, as to their being acts *colore officii* it is an entirely different matter."

The most satisfactory definition of acts *"colore officii,"* which we have found, is this: "An act done *'colore officii'* is an act done, not only by an officer professing to act as such, but also under color of authority to act in and about the particular matter in connection with which it was done." Taken from the case of *State v. Mankin,* 68 W. Va., 772, 70 S. E., 764.

It cannot with any degree of plausibility be argued that J. M. Thompson, as Clerk of the Probate Court, had color of authority to appoint himself guardian of the estate of Helen and Herbert Stone by signing the name of O. G. Thompson, the Judge of Probate, to the order purporting to appoint him such guardian. Such act was never at any time within the purview of his duties as the Clerk of the Probate Court. Nowhere in the Statutes is it contemplated or provided that the Clerk of that Court shall perform the duties of the Judge thereof; except in the case of the Clerk of the Probate Court of Anderson County, to whom such authority was especially given by legislative enactment as a proviso to Section 164 of the Civil Code of Procedure of 1922. Clearly it could not have been contemplated, or contracted against by the surety on the bond of J. M. Thompson, that he would assume to usurp such authority.

The Court in *Wieters v. May et al.,* 71 S. C., 15, 16, 50 S. E., 547, 549, said this: "The lawful acts of an officer, of course, can create no liability whatever; but if an officer, a state Constable, while attempting to execute some duty of his office, abuses or exceeds his authority, or executes it in an unlawful manner, to the injury of another, his bond is liable. To illustrate: If a state Constable, in an attempt to discharge a duty of his office * * * should, without just excuse, commit an assault and battery * * * to the injury of another, then there is liability upon his bond. But an assault and battery committed by a Constable under a bald assumption and usurpation of authority, without process or authority of any kind, would not be covered by the terms of his bond. These conclusions are not only the result of our own cases, but are supported by the general trend of authority in other jurisdictions." Citing cases from Ohio, Indiana, Mississippi, Kentucky and Iowa.

In the case of *Eugene Taylor v. Albert Shields et al.,* 183 Ky., 669, 210 S. W., 168, 3 A. L. R., 1619, it was held: "An arrest by a police officer without warrant, and in the absence of circumstances where an arrest is authorized by

Statute without warrant, is in his private and not his official capacity; and, therefore, sureties on his official bond are not liable for his act."

In *Taylor v. Morgan,* 43 Okl., 142, 141 P., 679, cited in 3 A. L. R., 1623 (note), this is said: "Sureties on the official bond of a town Marshal are only answerable for the acts of their principal while engaged in the performance of some duty imposed upon him by law, or for an omission to perform some such duty."

In *People v. Beach,* 49 Colo., 516, 113 P., 513, 515, 37 L. R. A. (N. S.), 873, this is found: "If the arrest of the prisoner was not a lawful one, if made under a void warrant, or without warrant in a case where a warrant is required, or if not made in such circumstances as justify the arrest without warrant, the officer was not acting in his official capacity, either *by virtue of, or under color of office."* (Italics added.)

In *State ex rel. Brennan v. Dierker,* 101 Mo. App., 636, 74 S. W., 153, 155, it is stated: "A distinction, which formerly enjoyed a wider vogue than it does now, is taken between the acts of a Sheriff or any other executive officer done by virtue of his office, or *virtute officii;* * * * or *colore officii;* and there have been many decisions that the officer's sureties are responsible for acts of the first sort when they are illegal, but not for those of the second sort. This distinction is subtle, and having proven barren of wholesome results, in recent well-considered judgments it has given place to the rule that illegal acts done only *colore officii* lay the bondsmen liable if the illegality consists in an abuse of authority, *instead of an outright usurpation."* (Italics added.)

The phrase "outright usurpation" aptly describes the conduct of J. M. Thompson in assuming to appoint himself guardian, and in signing the name of "O. G. Thompson, Judge of Probate of Laurens County."

We think the above-stated rule the reasonable one. It clearly exonerates the sureties on the bond of J. M. Thompson from liability for his acts of usurpation of authority.

Clearly the bond from J. M. Thompson, as Clerk, to O. G. Thompson, as Judge of Probate, was given to, protect the latter from the misconduct of the former. The public and those concerned with the business of the office were protected by the official bond of the Judge of Probate against loss or injury, from both of them.

For the reasons hereinabove set forth, the order sustaining the demurrer is affirmed, and the appeal is dismissed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.