STATE *ex Rel.* MIKE VERDIS *v.* FIDELITY & CASUALTY COMPANY OF NEW YORK *et al.*

(No. 8785)

Submitted October 25, 1938.    Decided November 10, 1938.

*Clay S. Crouse* and *Jno. Q. Hutchinson,* for plaintiff in error.

FOX, JUDGE:

Mike Verdis complains of the action of the circuit court of Raleigh County in sustaining a motion to strike out his evidence and direct a verdict, and the judgment of *nil capiat* rendered by the court thereon, in an action at law instituted by the said Verdis against the Fidelity & Casualty Company of New York and Emmett Williams, to which actions of the court exceptions were made at the time.

Emmett Williams was elected constable for Marsh Fork District of Raleigh County in 1936, and duly qualified as such, executing a bond in the penalty of $3,500.00 with the Fidelity & Casualty Company of New York as

surety. The obligation of the bond was that "the said Emmett Williams shall faithfully discharge the duties of the said office of Constable and account for and pay over, as required by law, all money which may come to his hands by virtue of the said office"; and the declaration alleges that the said bond was further conditioned as provided by Code, 61-7-5, relating to the unlawful or careless use of deadly weapons. On the 8th day of February, 1937, during the term of office for which he was elected, and while his bond was in full force and effect, the said Williams arrested the plaintiff, Mike Verdis, at his place of business at Edwight in said county, and took him before a justice of the peace upon a charge of selling beer to an intoxicated person; the charge was informal, was not pressed and was, in fact, dismissed by the justice on the day following. This suit was instituted by the plaintiff against the said constable and the surety on his bond to recover damages for such arrest.

Mike Verdis operated a business, part of which was the sale of beer. The evidence shows that Williams appeared at Verdis' place of business about nine o'clock in the evening, February 8th, and took into possession a slot machine which he charged Verdis with operating in violation of law. Later in the evening, about fifteen minutes before twelve o'clock, and near closing time, Williams again appeared at Verdis' place of business at and near which a number of people had congregated, including one Jake Webb. There is evidence in the record indicating that Webb was under arrest at the time. Verdis sold Webb a bottle of beer, either in the actual presence of Williams or so near that he immediately, and before the beer was consumed, went into Verdis' place of business and inquired who had sold Webb the bottle of beer, to which inquiry Verdis replied that he had made the sale. Williams then stated that Webb was intoxicated and immediately arrested Verdis for the offense of selling beer to a person intoxicated at the time. He took Verdis into custody, ordered him to leave his place of business, without permitting him to close up for the

night, and transported him to the office of a justice of the peace some distance away, where he was released and permitted to return to his home nearly two hours later. On the following day, Verdis, appearing before the same justice, was fined for operating a slot machine, and the charge against him for selling beer to an intoxicated person, not pressed by Williams or any other person, was dismissed by the justice. On these facts this suit was instituted. A demurrer to the declaration was overruled, and the case went to trial. After the plaintiff rested his case, a motion was made by the defendants to strike out plaintiff's evidence and direct a verdict in their favor. The motion was sustained and the jury returned a directed verdict for the defendants, on which the judgment complained of was rendered. It is stated in the petition for writ of error that the court's action was based upon the theory that "the defendant's acts were unlawful and not done under color or by virtue of his office because the plaintiffs' evidence showed that in fact no offense was committed in the presence of the defendant constable and the acts of the defendant constable were unlawful." There is nothing in the orders of the court showing the grounds upon which the motion to direct a verdict was sustained.

Assuming the ground stated above to be that which controlled the decision of the court, and we find none other therefor, consideration of the law governing the liability of public officials and sureties on their bonds in cases of this character is called for. The declaration in this case charges that the said Williams made the arrest "under color of the authority by virtue of his office as said constable." A distinction seems to be recognized between an act done by virtue of an office and one done under color of office, but in either case the surety is liable for the acts of its principal. *Barboursville* v. *Taylor*, 115 W. Va. 4, 174 S. E. 485, 92 A. L. R. 1093; *Lucas* v. *Locke*, 11 W. Va. 81; *State* v. *Mankin*, 68 W. Va. 772, 70 S. E. 764. We think it clearly established by the cases cited that for an unlawful act performed by a con-

stable, either by virtue of his office or under color of the same, both the constable and the surety on his bond may be held responsible in damages. On the other hand, neither will be held liable for an act performed by the constable if it in no wise relates to the duties of his office, and entirely beyond any duty he might be called upon to perform in connection therewith.

The decisive question in this case is, therefore, whether in making this arrest Williams was acting either under color of or by virtue of his office.

> "As commonly defined, those acts are *virtute officii* which are within the authority of the officer, but in doing which he exercises that authority improperly, or abuses the confidence which the law reposes in him; while acts done *colore officii* are those which are of such a nature that the office gives him no authority to do them. For acts done by virtue of his office as thus defined, the sureties of sheriffs are liable, while as to their liability for acts of the principal done under color of office, so called, the authorities are in conflict, * * * ."

24 R. C. L., p. 959, sec. 54.

> "Acts done by virtue and authority of the office—*virtute officii,*—are clearly to be regarded as official acts, and render the sureties responsible; but acts done merely under color of the office,—*colore officii,*—do not stand upon so clear a ground. The distinction between the two has been stated thus: 'Acts done *virtute officii* are where they are within the authority of the officer, but in doing them he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them.' For acts of the latter kind, it is held in many States that the sureties are not responsible."

Mechem's Public Offices and Officers, p. 177, section 284.

If we follow the rule laid down by one line of authorities referred to in the text quoted above, then, in order to create liability on the surety, the charge against the constable must have arisen from an act which he was undertaking by virtue of his office, although our cases do not support this theory. *Barboursville* v. *Taylor, supra.* However this may be, the testimony shows that Williams made an arrest for an alleged offense committed in his presence. The sale of beer to a person visibly or noticeably intoxicated is prohibited by our statute. Acts 1937, Chapter 12, Section 13. A constable has a right to make an arrest for a misdemeanor committed in his presence (Code, 50-18-2) ; but an officer making an arrest for a misdemeanor without a warrant must justify himself by showing that such arrest was lawful. *Noce* v. *Ritchie,* 109 W. Va. 391, 155 S. E. 127. We think the offense alleged against Verdis was committed in the presence of the constable, and that he had a right to make arrest therefor without a warrant, if the alleged offense was in fact committed, or if he had reasonable grounds to believe that an offense was being committed. *State* v. *Koil,* 103 W. Va. 19, 136 S. E. 510, holds that "A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case." See also, *State* v. *Lutz,* 85 W. Va. 330, 101 S. E. 434, wherein it is held that "An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting offense, and is aided by his other senses or by information as to the others, when it may be said the offense was committed in his presence." Here, the act of the sale of beer by Mike Verdis to Jake Webb was instantly observed by the constable, Williams, who promptly acted on what he saw, and by *virtute officii.* The fact that the prosecution on the charge for which he was arrested was not urged and the charge

dismissed has no bearing upon what the constable did at the time the arrest was made. There never could be recovery for false arrest against a surety on an officer's bond if the failure to follow the charge on which the arrest was made by prosecution would be held to make the act of the officer in making the arrest unlawful and outside the scope of acts for which he might be held liable under his bond. In *State* v. *Mankin, supra,* it was said, "An act done in the presence of an officer, not amounting to an offense, but which he may honestly believe to be an offense, ought to give him color of authority to make an arrest." This statement of law comes very nearly describing what probably happened in this case. The constable evidently believed that a crime was being committed in his presence and as an official made an arrest without a warrant, as he had a right to do. He may be able to justify the arrest by showing that an offense was committed in his presence, or that he had reasonable grounds to believe that such was the fact. The evidence introduced on behalf of the plaintiff, tending to show that the arrest was made without reasonable grounds therefor was, we think, sufficient to have warranted the trial court in submitting the case to the jury, and we are of the opinion that the motion to strike out the plaintiff's evidence and direct a verdict for the defendants should have been overruled.

The judgment of the circuit court will be reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*