STATE *ex rel.* CITY OF BECKLEY

*v.*

WILLIAM THOMAS ROBERTS, *et al.*

(No. 9820)

Submitted September 24, 1946.  Decided December 21, 1946.

*W. A. Thornhill, Jr.,* and *Scherer, Bowers & File,* for plaintiffs in error.

*D. D. Ashworth* and *George W. Williams,* for defendants in error.

LOVINS, JUDGE:

This action in debt was brought in the Circuit Court of Raleigh County by the State of West Virginia for the use and benefit of the City of Beckley against William Thomas Roberts and The Fidelity & Casualty Company of New York, to recover for the alleged breach of the condition of Roberts' bond, given at the time he was appointed a patrolman by the municipal authorities of said city. The trial resulted in a verdict for plaintiff in the sum of $2,261.70. Judgment for that amount was rendered by the trial court, to which this writ of error was awarded.

Roberts, after taking a civil service examination, was appointed patrolman by the municipal authorities of the City of Beckley on the 15th day of July, 1938, and executed a bond in the penalty of $3,500.00, with The Fidelity & Casualty Company as surety, the condition of which reads as follows:

" * * * Whereas, the above named principal has been duly *authorized* or elected to the office of City Patrolman of the City of Beckley, State of West Virginia, for the term of office beginning on July 15, 1938, and ending on indefinite termination.

"Now, therefore, the condition of the foregoing obligation is such that if the Principal shall faithfully perform such duties as may be imposed on him by law and shall honestly account for all money that may come into his own hands in his official capacity

during the said term, then this obligation shall be void; otherwise it shall remain in force."

We note a discrepancy between the copy of the bond set forth in the amended declaration and in plaintiff's Exhibit No. 8. The bond, as copied into plaintiff's declaration, requires Roberts to account for all money that may come into his hands in his official capacity. On the other hand, plaintiff's Exhibit No. 8 provides that Roberts shall "account for all money that may come into his *own* hands in his official capacity"; but such discrepancy is immaterial.

From time to time Roberts was promoted, until on March 15, 1942, he was appointed captain in the police department, and on that date he was designated as "captain in command" of the police force of the City of Beckley. Apparently he was so designated in order that he might retain his civil service status, but, in fact, Roberts was chief of police, as that term is generally understood. He served as chief of the police department of the City of Beckley from March 15, 1942, until January 4, 1944, on which date he was removed from office by the mayor of the city.

The City of Beckley has no jail and, as a consequence, an arrangement was made with the Sheriff of Raleigh County that all persons arrested by the police officers of the city, should be placed in the county jail. The board of persons incarcerated in the county jail by police officers of the City of Beckley was paid to the sheriff by the city at the rate of forty-two cents a day. For many years a custom had prevailed by which the deputy sheriffs in charge of the jail would accept a deposit of money or of property sufficient in value to pay the minimum fine and costs assessable against persons therein confined as city prisoners, and release the persons making such deposits.

A short time after Roberts was appointed chief of police, he complained to the mayor and council of the City of Beckley that the persons in charge of the county jail were refusing or failing to cooperate in receiving

and releasing the persons placed in jail by city officers. An informal discussion of this situation by the mayor, the members of the council and Roberts, resulted in the mayor and Roberts being verbally directed to adjust the matter, but no entry was made on the municipal records with reference thereto.

Acting under the direction aforesaid, the mayor then in office wrote a letter in which he set forth the minimum amount of fines and costs, as provided by ordinances of the City of Beckley for certain offenses named in the letter, and further directed that city prisoners making a deposit sufficient to cover the minimum fine and costs be released. It is also contended by plaintiff that Roberts wrote a similar letter, which Roberts denies. There is testimony clearly showing that deputy sheriffs of Raleigh County in charge of the jail, hereinafter referred to as jailers, during the time Roberts was chief of police would accept deposits of money or property on the basis of the minimum schedule of fines for the offenses set forth in the letter of the mayor and the alleged letter of Roberts, and in cases where there were no schedules of fines and costs shown in the letter, they would call the chief of police for directions as to the amount of the deposit acceptable. In addition to the minimum fines and costs, the jailer on duty would collect an additional dollar, which he would retain for his services, and would likewise collect an additional dollar which Roberts allegedly retained. Many persons who had been confined upon arrest by city policemen were released without being brought before the police judge of the city, and the deposits made by them were allegedly forfeited to the city.

No ordinance of the City of Beckley was introduced in evidence, but according to the undisputed testimony a policeman of the city, when making an arrest, would turn in, to persons in charge of the police radio at the city hall, a memorandum called "an arrest slip", and when the prisoner was confined in jail the officer would prepare a memorandum denominated in the record as

a "commitment", which was left with the person in charge of the jail.

Police court was regularly held in the City of Beckley three times a week, at which time the chief of police, evidently acting as the clerk of that court, would call the names and offenses of persons arrested and charged with crime, and the police judge would thereupon enter the data on his docket and show the disposition of the charge. According to the testimony, it was the duty of the chief of police of the city to collect all moneys for all fines imposed for violations of the ordinances of the city, and to turn over such money to the recorder-treasurer of the city.

Acting under the custom hereinabove mentioned, the chief of police in performance of the duty of receiving money due because of violations of ordinances would go either in person or send a policeman to the county jail at irregular intervals and there receive from the jailer cash and property there deposited.

The State Tax Commissioner caused an audit to be made of the books of account of the City of Beckley with reference to the police department of that city for the period beginning June 30, 1942, and ending December 31, 1943. From such audit it appeared that there was a considerable discrepancy between the number of prisoners for whom the city had paid board to the Sheriff of Raleigh County and the number of names appearing on the police judge's docket, and thereupon the auditor made a further investigation. He checked the temporary commitments made out by the police officers and left at the county jail, and made several supplemental audits. He arrived at the conclusion that one hundred seventy-two persons had been arrested by city police officers, confined in the county jail, and that cash or property deposits, made according to the schedule of minimum fines, plus the sum of two dollars, hereinabove mentioned, had been collected from that number of persons, but that the names of said one hundred seventy-two persons did not appear on the docket of the police court of the city,

and hence no money had been paid to the city on account of said deposits.

Two persons, one the recorder-treasurer of the city, testified that they had received all money due from persons convicted of offenses as shown by the police court docket, and that they had not received any money deposited by the one hundred seventy-two persons. The evidence is somewhat chaotic, however the auditor, after making several supplemental examinations of the accounts, testified that there was $2,261.70 due the city. In this he is corroborated by the city recorder-treasurer in office at the time of this trial.

Numerous exhibits were introduced by plaintiff in substantiation of the oral testimony of the auditor and the recorder-treasurer. There is testimony to the effect that defendant Roberts had received the sum of $32.00 collected by a constable in behalf of the city for which he had not accounted; that he had received a total of $295.66 on one occasion from a jailer; and that he had received $28.00 from a police officer of the city. Testimony was adduced that Roberts had received the residue of the money so deposited with the jailers, but there is no direct testimony that he was actually paid the amounts admittedly received by the various jailers. There is testimony tending to show that Roberts procured possession of a loose-leaf receipt book theretofore kept by the jailers, showing receipts of money by him; that he either destroyed or suppressed the book, and thereafter refused to sign receipts for money or property turned over to him.

Roberts denied liability, produced and filed a private book of memoranda which tends to show that he had accounted for all moneys which came into his hands as chief of police of the city of Beckley. On this state of facts, the jury found for the plaintiff in the sum testified to by the auditor, and the city recorder-treasurer.

Defendants assign eleven errors, all of which are grounded on the trial court's action in giving, over de-

fendant's objection, instructions offered by plaintiff, and in refusing to give instructions requested by defendants. We think that a condensation of the assignments of error presents the following questions: (1) Is the City of Beckley entitled to maintain this action for the recovery of money received by Roberts; (2) is there sufficient evidence to establish that Roberts received the money claimed by plaintiff; (3) is Roberts responsible, as a matter of law, for money collected by the jailers; (4) has Roberts defaulted in the payment of money due the City of Beckley; and (5) is the condition of Roberts' bond broad enough to cover his alleged defalcations?

We find no case decided in this jurisdiction which approves or authorizes the deposit of money or property with arresting officers in lieu of a bond or recognizance, and the record herein is silent as to the ordinances of the City of Beckley, if any, covering that subject. A person arrested on a criminal charge and admitted to bail by a court or officer authorized by law to do so, may, in lieu of surety on his recognizance, deposit cash in the amount of the bail with the clerk of the circuit court or other court in which he was admitted to bail. Section 2-a, Article 6, Chapter 34, Acts of the Legislature, 1943. Clearly the foregoing statute is not applicable to the instant case. Moreover, the statute above cited was not effective until the 30th day of May, 1943. A person arrested may be admitted to bail by the arresting officer under the conditions prescribed by Code, 62-2-18. But that statute is clearly inapplicable to this case, as the officers arresting the persons who made deposits with the jailer, so far as the record shows, had no capias or other process. An obligation taken by an officer for a person in his custody otherwise than as directed by law is void. Code, 6-2-21. We are, therefore, confronted with the problem whether the City of Beckley actually is entitled to recover the money received by the deputy sheriffs in charge of the jail and turned over to Roberts. However, the rights of the persons who made such deposits as against the City of Beckley are not before us for decision in this case; and the unwar-

ranted and illegal methods under which the money was deposited is of no avail to Roberts, as will be presently shown.

The record herein discloses sufficient facts established by a clear preponderance of the evidence that Roberts received the money collected by the jailers from persons incarcerated in the County Jail of Raleigh County by police officers of the city. There is testimony to the effect that on one occasion he received $295.66 from Williams, a jailer; $32.00 from a constable who had collected the same on behalf of the City of Beckley; and $28.00 collected by a police officer of the city. As to the residue of the money sufficient to make up the amount of the verdict, the proof is circumstantial, resting in a large measure on the testimony of the auditor from the state tax commissioner's office, who audited the accounts of the City of Beckley. An examination of the available memoranda by the auditor and the conclusions reached by him with respect to the amounts collected by the deputy sheriffs in charge of the jail from persons released on making cash or property deposits, furnishes a sufficient factual basis for the jury to have drawn an inference that Roberts received the money, and consideration of the testimony of the various jailers, coupled with the testimony that Roberts destroyed or suppressed the receipts in a loose-leaf book and thereafter refused to sign receipts, is strongly indicative that he received the money with which he is charged.

The practice of receiving deposits of money or property in lieu of recognizances or bonds with proper surety, indulged in by the City of Beckley and its officers is not approved and is without warrant of law. Such attitude of disapproval is not lessened when we consider that the release of city prisoners was handled so loosely as to render uncertain the grounds on which some of them were released. Roberts received money, which did not belong to him, collected by him without legal authority but under color of his office as chief of police of the City of Beckley, pursuant to an established custom and at the

informal direction of the members of the city council. It was his duty to collect and account for all fines assessed and costs imposed by the police judge of the City of Beckley. Section 23, Chapter 18, Acts of the Legislature, 1927, Municipal Charters. True, the money here claimed was not assessed as fines and costs by the police judge, but that fact does not release Roberts from the duty of accounting to the city for the same. To say otherwise would permit Roberts to convert unlawfully to his own use the money and property he collected.

A distinction between an act done by virtue of office and an act done under color of office was drawn in the case of *State* v. *Casualty Co.,* 120 W. Va. 593, 596, 199 S. E. 884. In this jurisdiction it has long been held that an officer and his surety are responsible for acts done by the officer under color of office. *Lucas, Jr.* v. *Locke, et al.,* 11 W. Va. 81, 91. A departure from the principle enunciated in the *Lucas* case is implicit in the cases of *State* v. *Enslow,* 41 W. Va. 744, 24 S. E. 679, and *State* v. *Barnes,* 52 W. Va. 85, 43 S. E. 131. That deviation is explictly emphasized and discussed with approval in the case of *State* v. *Mankin,* 68 W. Va. 772, 70 S. E. 764; but this Court overruled the *Mankin* case is that particular in *Booten* v. *Napier,* 121 W. Va. 548, 5 S. E. 2d 441, and reiterated with approval the rule laid down in the *Lucas* case. See *Barboursville* v. *Taylor,* 115 W. Va. 4, 10, 174 S. E. 485. In accordance with the rule laid down in the *Lucas* case, and approved in the *Booten* v. *Napier, supra,* and *Barboursville* v. *Taylor, supra,* we conclude that, in the circumstances here shown, the acts of the defendant Roberts were done under color of his office, and that, accordingly, he and his surety are liable on his official bond for such acts, if the condition of the bond here considered is sufficiently broad to cover the action of Roberts.

Defendant contends that the effect of the verdict and judgment is to hold Roberts liable for the money collected by the jailers, regardless of whether he received the money and property deposited by the persons released

from jail. We do not think such position is maintainable. The jury found on sufficient evidence that Roberts received from the deputy sheriffs in charge of the jail money and property, the aggregate of which equals the amount of the verdict and judgment. And at this point it is well to remark that a perusal of-the testimony of the auditor relative to the audit made by him, and an examination of the exhibits filed with his testimony, disclose a meticulous effort on his part to resolve all doubts in Roberts' favor. We perceive no reason for disturbing the jury's finding in that respect.

As we have hereinabove pointed out, the acceptance of deposits of cash and property in lieu of bond or recognizance in the circumstances disclosed by this record are without authority of law. But can Roberts plead the illegality of his conduct to defeat the plaintiff's claim? In the case of *Wheeling* v. *Black, et al.* 25 W. Va. 266, this Court, in disposing of a similar claim, held as follows: "When the collector of a city collects from the taxpayers by virtue of his office interest on taxes, he is not in position to assert that said interest was illegally collected; and in an action brought against him for such interest by said city he will not be permitted to defeat the same by alleging such illegal collection." Of course, the holding in *Wheeling* v. *Black, supra,* relates to acts done by virtue of office, but we think that principle applies with equal force to acts done under color of office.

As between plaintiff and one of its recalcitrant officers, who has the better right to have and receive the deposits made by the one hundred and seventy-two persons who had been charged with crime, and failed to appear for trial of such charges? The answer to that question is obvious. Plaintiff at least had a species of special property in the deposits made with the jailers, which, coupled with the absence of any right of property therein as to Roberts, places him in the category of a defaulter.

The recorder-treasurer of the City of Beckley testified that the bond of Roberts was in force during the year

1942 and 1943, and that the premiums for those years had been paid. It is reasonable to assume that such premiums were paid out of public funds, which, together with the statutory requirement for such bond found in Section 15, Chapter 18, Acts of the Legislature, 1927, Municipal Charters, gives the bond herein the status of an official bond. See *Hatfield* v. *Cruise*, 120 W. Va. 16, 197 S. E. 23. Moreover, the bond having been executed for a consideration by a corporation organized for surety purposes, the usual rule of strict construction is not generally applied. It is undoubtedly the general rule that a voluntary surety is a favorite of the law and entitled to insist upon the strict letter of his contract. But "* * * the rule of *strictissimi juris* does not apply to a corporation organized to enter into bonds and undertakings for profit. Such companies are essentially insurers, and their contracts being usually expressed in terms prescribed by themselves should be construed most strictly in favor of the obligee therein." *Board of Commissioners* v. *Clemens*, 85 W. Va. 11, 100 S. E. 680; *Mills* v. *Insurance Co.*, 114 W. Va. 263, 171 S. E. 532. For statement of that doctrine see 50 C. J., Principal and Surety, Section 133. The bond in the instant case being an official bond and not subject to the rule of strict construction, we are convinced that the condition thereof is sufficient to cover the acts of Roberts done under color of his office. *Hicks* v. *Randich*, 106 W. Va. 109, 144 S. E. 887.

The corporate defendant, however, contends that the bond was executed by Roberts as patrolman of the City of Beckley, and defalcation by him as chief of police does not constitute a breach of the condition.

All members of the police force of the City of Beckley under the provisions of its charter are required to give bond in the penalty of $3,500.00, and such bonds are required to be conditioned that the officer shall "faithfully and impartially discharge the duties of such * * * office and to account for and pay over as required by law all moneys coming into his hands by virtue of his office."

That provision of the charter clearly shows that no distinction is contemplated as between the chief of police and the other members of the police department. It is true that Roberts, as chief of police, probably received more money, but such alteration in the duties of Roberts caused by his promotion is not sufficient to invalidate the bond. See Throop on Public Officers, Section 278; Mechem, Public Offices and Officers, Section 306. The duties performed by Roberts, as chief of police of the City of Beckley, were germane to the office of patrolman. See Stearns on The Law of Suretyship, 4th Ed., Section 152.

For reasons herein given the judgment of the Circuit Court of Raleigh County is affirmed.

*Affirmed.*