# CHARLESTON.

### W. H. BARGER v. E. E. HOOD, ECHO COMPANY AND FRANK J. PAYNE.

Submitted September 22, 1920.   Decided October 5; 1920.

1. LIBEL AND SLANDER—*A Declaration in Action for Libel is Demurrable for Misjoinder of Parties; Statute Precludes Consideration of a Demurrer Involving Construction of Language.*

    A demurrer to a declaration in an action for libel for publishing or using words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, may be entertained upon the ground of a misjoinder of parties. The inhibition contained in the statute to the effect that no demurrer shall preclude a jury from passing upon the language used prohibits the court from entertaining a demurrer upon any ground which involves a construction of the language.   (p. 80).

2. SAME—*Suit Not Maintainable Against Several Unless Publication is Their Joint Act.*

    A suit for libel cannot be maintained against two or more defendants, unless it appears from the declaration that the publication of the libel was the common or joint action of all of them.   (p. 80).

3. SAME—*Declaration, Not Charging Joint Action by all Defendants, is Demurrable.*

    A declaration in an action for statutory libel against three defendants, which charges that one of them wrote and published a certain false and slanderous article, and that the other two defendants also published and printed the same false and slanderous article, does not charge joint action on the part of all three defendants, and a demurrer thereto for misjoinder of defendants should be sustained.   (p. 80).

4. SAME—*Where Publication is not Joint Act of All Defendants, Plaintiff May Amend or Strike Part of Defendants.*

    Upon sustaining a demurrer to a declaration in an action against two or more defendants for statutory libel, because the declaration does not show that the publication of such libel was the result of the common or joint action of all of the defendants, leave will be given to the plaintiff to amend his declaration so as to show community of action upon the part of the defendants, or by striking out all of the defendants except the one against whom he may elect to proceed.   (p. 80.)

5.  CORPORATION—*Corporation Not Liable for Agent's Publication of Libel, Unless Authorized or Ratified.*

    A corporation will not be liable for the publication of a libel by its agent, unless he was authorized thereto, or the same was published while acting within the scope of his authority, or his act in regard thereto was subsequently ratified by the proper corporate authority.  (p. 82).

6.  SAME—*Declaration Against Corporation for Publication of Libel Held Not Demurrable.*

    A declaration against a corporation for the publication of an alleged libel is not demurrable because it fails to aver that the agent publishing the libel acted under authority from the corporation, or within the scope of his authority, or that his act was subsequently ratified.  The averment that the corporation published the libel necessarily means that the facts exist which make it responsible for the publication.  (p. 82).

7.  SAME—*Corporation Authorizing Agent to Publish Libel and Agent Himself Are Liable.*

    In an action for a libel published by a corporation through an agent, both the agent who actually publishes it and the corporation by whose authority or direction the publication was made will be liable therefor.  (p. 82).

8.  LIBEL AND SLANDER—*Corporation Defending Action for Statutory Libel May Justify by Proving Truth and Good Motives.*

    In an action for statutory libel the defendant may justify by proving the truth of the charge made, and that the publication thereof was made with good motives and for justifiable ends, as in an action for common law libel.  (p. 82).

9.  SAME—*In action for Statutory Libel Plea of Justification Held Good.*

    A plea of justification in an action for statutory libel which sets out each of the charges which are alleged to be libelous, and avers that the same are true according to their proper tenor and effect, and that the publication was made for the purpose only of protecting the business and character of the defendants from the effects of attacks being made thereon by the plaintiff in articles published in a newspaper, and setting up the facts in regard thereto, is good as a plea of justification, where it appears that the things published of and concerning the defendant, if true, would have the effect to prevent injury to the character or business of the defendants from the attacks made thereon by the plaintiff.  (p. 85).

10.   SAME—*In Action for Statutory Libel, Defense of Privilege is
      Available.*

      'The defense of privilege is available to a defendant in
      a suit for statutory libel, as well as in actions for common
      law libel, but in order for such a plea to be good it must
      show that the defendant published the alleged libel believing
      it to be true and to persons to whom he either owed a duty,
      or who were jointly interested with him in the matter sought
      to be protected by the publication.  A defendant cannot claim
      that a libel published promiscuously to all persons is privi-
      liged, unless he owed a duty to the general public which he
      sought to perform by the publication.  (p. 85).

(WILLIAMS, PRESIDENT, absent.)

Questions Certified from Circuit Court, Mineral County.

Action for statutory libel by W. H. Barger against E. E.
Hood, Frank J. Payne, and others.  Demurrer to declaration
overruled, and two special pleas allowed to be filed, and two
other special pleas rejected and rulings certified.

*Reversed in part.  Affirmed in part.*

*Taylor Morrison, H. G. Fisher,* and *R. A. Welch,* for plaintiff.
*W. C. Grimes* and *Arthur Arnold,* for defendants.

RITZ, JUDGE:

The action of the Circuit Court of Mineral County in over-
ruling a demurrer to a declaration for statutory libel, and in
permitting two special pleas to be filed, and rejecting two other
special pleas, is certified to this Court for its judgment thereon.

The suit is brought against three defendants, to-wit, Frank
J. Payne, E. E. Hood, and the Echo Company, a corporatoin,
and charges the publication of an article which from the usual
construction and common acceptation of the words used there-
in are construed as insults, and tend to violence and breach of
the peace.  The demurrer to this declaration is based upon sev-
eral grounds, the most material being misjoinder of the de-
fendants.

The first suggestion is that inasmuch as this is not a suit
for libel at common law, but for the publication of insulting
words, under the statute a demurrer does not lie to the declar-

ation because of the provision of § 2, ch. 103 of the Code. None of the grounds of the demurrer urged to this declaration involve the construction of the language used, and it is urged that the inhibition of that statute only goes to the extent of denying the right of the court to construe the language, and not to the right of the court to entertain a demurrer for other reasons. In *Poling* v. *Pickens,* 70 W. Va. 117, a demurrer to the declaration in an action of this kind was under consideration, and it was held that it did not lie, but the ground of demurrer urged there was that the language used was not, according to its ordinary acceptation, insulting, and that decision is only authority for the principle that a demurrer may not be entertained for that reason. This statute was passed in aid of acts to prevent duelling, the argument being that language of an insulting character was often used under such circumstances that the law offered no redress, and because of this fact those insulted were inclined to resort to personal violence for satisfaction. The legislature evidently contemplated that juries were better qualified to determine what language would be insulting to a gentleman's moral sensibilities than the judges who, because of their habits of thought, may acquire a more or less pachydermous disposition, and be likely to hold language which to others might seem violent or insulting as not insulting or not likely to produce a breach of the peace. It cannot be doubted but that in the construction of such language the habits of thought and methods of life of those charged therewith play a large part, and the beneficent results accomplished by this legislation would seem to justify the confidence of the legislature in the juries charged with the trial of such cases. It is argued that a jury might construe the mildest kind of language as insulting and tending to a breach of the peace, and the courts would have no power to correct their verdict upon that ground. A review of the cases which have arisen under this statute justifies the conclusion that the juries can be trusted to protect the rights of individuals in this regard, and whether this be true or not the legislature undoubtedly has the power to place upon the jury this duty instead of upon the court. The reason for the enactment of this statute makes it quite clear

that it was the intention to limit the power of the court to entertain a demurrer only when that demurrer was based upon a construction of the language, and not when it is founded upon some such cause as misjoinder of parties, as is the case here.

The defendants contend that their demurrer should have been sustained because there is a misjoinder of defendants in the declaration. They argue that two or more persons cannot be joined in a suit for libel unless it is shown that the publication of the libel was the common or joint action of all of them. The authorities are clear that this is the law. 17 R. C. L., Title "Libel and Slander" § 130. The plaintiff does not controvert this legal proposition, but contends that the declaration sufficiently avers the publication in this case to have been the joint action of all of the defendants. In the declaration it is averred that Frank J. Payne wrote and published in the Mountain Echo, and that the defendants, Echo Company and E. E. Hood, published in the Mountain Echo a false and scandalous article concerning the plaintiff. This language may mean that Frank J. Payne wrote this article and published it, and that then, subsequently, E. E. Hood and the Echo Company again published it. In fact, this is the logical meaning of the language used. This would aver two publications of the article, one by Payne, for which he alone would be liable, and one by the Echo Company and by Hood, for which they would be liable, and not Payne, and joining Payne with the Echo Company and Hood under such circumstances is a misjoinder. This imperfection in the pleading, however, may be cured by amendment. If it is the intention to charge a single publication in which all of the parties engaged, and which was the result of their joint action, the language can be made to clearly express this purpose; or if, on the other hand, there were separate publications by the defendants of the same article, the plaintiff may elect which one he will proceed against, and dismiss his suit as to the others. *Farley* v. *Crystal Coal & Coke Co.,* 85 W. Va. 595, 102 S. E. 265.

It is also urged that the declaration is demurrable for the reason that it is not charged that the agent of the Echo Company who acted for it in the publication of the alleged libel

was authorized thereto, or that his act was subsequently ratified. It is quite true that a corporation must act through agents, and it will not be liable for a libel published by one of its agents unless he was authorized thereto, or his acts subsequently ratified, but it is hot necessary in a pleading to aver the method of proof to which the plaintiff will resort to sustain his case. When he says in his declaration that the corporation published the libel, that carries with it the necessary inference and conclusion that either some authorized agent of the corporation did it, or that the act of the party who did do it, if not authorized, was subsequently ratified, and proof, upon the trial, of either prior authority of the agent, or subsequent ratification of his act, will suffice.

It is also insisted that E. E. Hood is improperly joined for the reason that the declaration shows he was only the agent of the defendant Echo Company, and if that company is liable for this publication, then its agent who published it by its authority would not be liable. It is a principle of the law of contracts that where a known agent acts within the scope of his authority, the principal alone is liable for his acts, but this does not extend to the commission of torts. Where a tort is committed by one who is the agent of another, even with that other's direction, he may be held liable for the tort, as well as the principal, and this is as true in the case of the publication of a libel as of any other tort. 17 R. C. L., Title "Libel and Slander" § 132 and authorities there cited. We think this sufficiently disposes of the questions raised upon the demurrer to the declaration.

Special plea No. 1 tendered by the defendants and permitted to be filed is a plea of justification. With considerable circumstantiality, as it necessarily had to do, it avers the truth of the matter published of and regarding the plaintiff, averring in connection with each of the statements published the proper interpretation and meaning thereof, and it avers, as showing that the same was published with good motives and for justifiable ends upon the part of the defendants, that the plaintiff and the defendant Payne had had a contract for the publication by them jointly of an industrial reconstruction edition of the town of

Keyser; that the plaintiff failed to perform his part of the contract, and the defendant Payne was compelled to secure the publication of this edition by the defendant Echo Company, a corporation, in order to carry out his contract with his subscribers; that the plaintiff thereupon published a number of articles in a newspaper published by him concerning the defendant Frank J. Payne attacking his character, his responsibility, and his honesty, and also solicited and attempted to procure a number of his subscribers to break their contracts, and that it was to meet this condition, and to protect their joint business enterprise from being ruined by the said plaintiff that the defendants published the article complained of. The article complained of not only asserts the financial responsibility and good business habits and character of the defendant Payne, but in order that the declarations of Barger may not have the disastrous effect which it is alleged that they were intended to have, his character is attempted to be laid bare. He is charged with untruth, with dishonest business dealing, as well as several other charges being made against him reflecting upon his business and social standing. These charges, it is contended, are true, and were made for the purpose of informing the people who might get hold of the articles written and published by Barger as to the character of man he is, so that credence would not be given to his statements to the injury of the defendants. It is contended that this does not show good motives or justifiable ends. We do not agree with this contention. If it should be determined that the statements published concerning the plaintiff, taking them in their ordinary acceptation in the connection in which they were used, were true, and that the motive actuating the defendants in publishing them was to protect themselves from loss because of Barger's unwarranted attacks upon them and their business, this would be a good motive, and the end sought to be attained would be justified. Certainly one has a right to protect his reputation and business from the unwarranted and unjustified assaults thereon by others, and if it is necessary, in order to meet such attacks, and to prevent them from having the effect which they were evidently intended to have, to publish the truth in

regard to the character of their author, such publication would be justified, for are we not taught by authority which we have always reverenced that, "If any provide not for his own, and specially for those of his own house, he hath denied the faith, and is worse than an infidel." We think, therefore, that the court properly permitted special plea No. 1 to be filed.

Special plea No. 2, which was also allowed to be filed, is an attempt to excuse the defendants on the ground that the publication was privileged. It avers the facts as we have before stated them in regard to the publications by Barger, and the publication of the article complained of to meet the effect that Barger's publications might have, and for that purpose only, and avers that the defendant believed the matter published by them to be true. It is quite true that one is not liable in damages for privileged communications. Privileged communications, however, are made, as a rule, either to some one to whom there is a duty to make the communication, or for the protection of the interest of the party making it. In order for a communication to be privileged, the party making it must be careful to go no further than his interests or his duties require. He cannot publish falsehoods of another promiscuously to the world, no matter though he does believe them to be true, and no matter how good his motives or justifiable his ends. He must limit his publications to the parties to whom he owes the duty, or to the parties who may be interested with him in the protection of some interest actuating the publication. Of course, the circumstances under which a libel is published, and the motives and purposes of the defendant in publishing it, may be shown in mitigation of damages, but where in its publication, either as to the method used, or as to the persons to whom the publication is made, the defendant goes beyond the limits which his own protection or his duty requires, he cannot claim immunity because of privilege. See *Alderson* v. *Kahle,* 73 W. Va. 690; Newell on Slander & Libel, 3d Ed. §§ 562, etc. . This special plea No. 2 does not show that the defendants confined the publication of their libel to those to whom they owed a duty, or to those with whom they had a joint interest to protect, and resorted to a particular means for its publication to

that end, but on the other hand it shows that they published it in a newspaper where it would come to all classes of persons, both those interested and those not. Such a publication cannot be said to be privileged, and if the defendants would relieve themselves of liability therefor they must justify it by proving not only its truth, but by showing that the motives which actuated them were good, and that the ends which they sought were justifiable, which they can do under their special plea No. 1. *King* v. *Root,* 4 Wendell 113, 21 Am. Dec. 102; *Trebby* v. *Publishing Co.,* 74 Minn. 84, 73 Am. St. Rep. 330; *Fenstermaker* v. *Pub. Co.,* 12 Utah 439, 35 L. R. A. 611. We are, therefore, of opinion that special plea No. 2 should have been rejected.

Special pleas Nos. 3 and 4, which were rejected by the court, deny that the publication of the alleged libel was the joint action of the defendants, but aver that it was the separate action of each of them. These pleas were properly rejected. Even assuming that this matter could be raised in this way, it would not defeat the plaintiff's declaration, but would only compel him to elect as to which one of the defendants he would proceed against in this suit, and dismiss as to the others.

We conclude that the circuit court should have sustained the demurrer to the declaration with leave to amend; that special plea No. 2 should have been rejected; that special plea No. 1 was properly allowed to be filed; and that special pleas Nos. 3 and 4 were properly rejected; and answer the questions certified accordingly.

*Reversed in part. Affirmed in part.*