LUTHER STEWART *v.* W. F. RILEY *et al.*

(No. 7750)

Submitted January 16, 1934. Decided February 6, 1934.

*Bailey & Shannon* and *Blue, Dayton & Campbell*, for plaintiff in error.

*Rollins & Rollins*, for defendant in error.

KENNA, JUDGE:

This is an action of trespass on the case brought by Luther Stewart by reason of allegedly slanderous words injurious to the plaintiff's trade, office or employment uttered by W. F. Riley. The defendants in the circuit court of Wyoming County were W. F. Riley and Morrison Coal Company, a

corporation. The trial court directed a verdict as to the corporation. No error is cross-assigned on this account. To a judgment for $350.00 against the defendant, W. F. Riley, this writ of error is prosecuted.

Admittedly, the plaintiff, while working at the Glen Morrison operation of Morrison Coal Company, lost the index and second fingers of his left hand. Plaintiff's contention is that he lost his fingers by accidentally striking them off with an ax while trimming the cap board of a prop he was about to place in his working room in the mine. The injury occurred on May 14, 1932, while the defendant, W. F. Riley, was employed as general superintendent by that company, and while he was stationed at Glen Morrison. The Morrison Coal Company was a subscriber to the Compensation Fund. The injury was at once reported to W. M. Thompson, the assistant mine foreman, who was inside the mine near the scene of the accident. He, with Worley Walker and another, after Stewart had been sent outside, went at once to the place of the accident. As soon as the plaintiff was brought out of the mine, W. A. White, the general mine foreman, was informed of the accident, and, immediately after causing the plaintiff to be taken to the hospital, entered the mine for the purpose of investigating the circumstances of the injury. Having done so, he returned to the outside within about an hour and a half after the injury and reported to the defendant Riley, the superintendent, circumstances from which he concluded, and from which Riley concluded, that the plaintiff likely had come to his injury by deliberate means. After the report of the circumstances of the accident was made to the defendant Riley, he is alleged to have said on that same day in the presence of witnesses that the plaintiff had cut his fingers off purposely. There is some conflict in the proof as to just what Riley did say, his own testimony indicating that his statement was to the effect that it *looked like* plaintiff had cut his fingers off purposely. Plaintiff and other witnesses testified that he made this statement as a direct charge and that he did not qualify it. However, there was no denial of his having made a statement substantially as alleged in plaintiff's declaration. The declaration is confined to the one utterance of May 14, 1932, seeking recovery on that statement alone.

No point is made on this writ of error that the words allegedly slanderous were not uttered by Riley. Neither was the truth of the words pleaded. Defamation of the kind alleged is actionable *per se* and no special damages need be alleged or proved in order for plaintiff to recover. *Hancock* v. *Mitchell*, 83 W. Va. 156, 98 S. E. 65.

The defense is that the trial court erred in not considering the words qualifiedly privileged and, inasmuch as no malice was shown, in not, on that account, instructing the jury to return a verdict for the defendant Riley. Plaintiff in error says that in any event the trial court should have instructed the jury that the defendant Riley stood in a relationship entitling his statements to be qualifiedly privileged, that the occasion upon which they were uttered was a privileged occasion, and should have submitted to the jury, under proper instructions, the question of whether the words assigned as actionable were uttered in a manner showing them to have been actuated by malice.

The second point of error is assigned in the refusal of the trial court to admit an order subsequently entered by the Workmen's Compensation Commissioner refusing compensation to Stewart because of the fact that this injury, in the opinion of the commissioner, was self-inflicted.

To the main defense, that of qualified privilege, the defendant in error counters (1) that there was no privilege, and (2) that if there was a qualified privilege, Riley, as a matter of law, exceeded its bounds by an unnecessarily defamatory statement, and that if this is not so, then the statement was made with malice.

To the second proposition, the defendant in error simply says that the order of the Workmen's Compensation Commissioner is not relevant.

We are not, of course, here concerned with the question of absolute privilege. The defense rests upon qualified privilege. It seems to be quite clear from the decided cases that in order for the defendant to get the benefit of qualified privilege and in order for that privilege to bar recovery, two things must combine: First, the occasion upon which the words are spoken must be a privileged occasion, and, second, the occasion being

privileged, the communication must have been made legitimately within the privilege that existed. Where these two elements are established in defense, the burden shifts back to plaintiff to show actual malice. *Rigney* v. *Keesee & Co.,* 104 W. Va. 168, 171, 139 S. E. 650.

Reporting the circumstances of injuries that take place in the course of their business is directly enjoined upon the subscribers to the compensation fund by the statute itself. Code, 23-2-2, 3. In addition, the premiums to be paid by a subscriber into the fund are based partly upon the accident experience of the subscriber. Upon the happening of an accident or an injury, this duty and this interest naturally devolves upon the superintendent of a mining operation. Pursuant thereto, the superintendent would naturally be expected to make inquiry of the other employees of the company who were at or in the vicinity when the injury took place or for other reasons might directly or indirectly come into the possession of knowledge affecting its circumstances. It is apparent from the proof that this is exactly what Riley was doing at the time he uttered the words sued on. While no cases directly and altogether in point have been found, we think that, under the decided cases, the occasion upon which Riley spoke was clearly a privileged occasion. See *Elmore* v. *Atlantic Coast Line Railway Co.,* 189 N. C. 658, 127 S. E. 710; *Western Union Telegraph Company* v. *Buchanan,* (Tex.) 248 S. W. 68; *Nord* v. *Gray,* 80 Minn. 143, 82 N. W. 1082; *Koehler* v. *Sircovich,* (Tex.) 269 S. W. 812; *Hoyle* v. *Young,* (Va.) 1 Wash. 150, 1 Am. Dec. 446. See also *Higgins* v. *Coal Co.,* 103 W. Va. 504, 138 S. E. 112, in which this court held that a letter addressed to the Compensation Commissioner by a subscriber to the fund concerning a pending claim was absolutely privileged.

Where, as here, there is no conflict in the evidence concerning the circumstances under which the words declared on were uttered, the question of privilege is one of law for the court. *Rigney* v. *Keesee & Co.,* 104 W. Va. 168, 171, 139 S. E. 650; *Ward* v. *Ward,* 47 W. Va. 766, 772, 35 S. E. 873.

After the privilege of the occasion has been established, the decided cases seem to proceed upon lines of divergent reasoning as to when recovery may be had in spite of the privilege. One line of cases goes on the theory that privilege having been

established, proof of its abuse shows actual malice and recovery is had in spite of the privilege. *Aylor* v. *Gibbs,* 143 Va. 644, 129 S. E. 696; *Nichols* v. *Eaton,* 110 Iowa 509, 81 N. W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319; *Brow* v. *Hathaway,* (Mass.) 13 Allen 239. Another line of cases seems to proceed upon the theory that the privilege having been established, proof of its abuse shows an excess of the privilege and recovery is permitted without the showing of malice. *Gandia* v. *Pettingill,* 222 U. S. 452, 24 L. Ed. 267; Note, 26 A. L. R. 843. The same proof that establishes the existence of malice under the first theory, is taken as showing an excess of the privilege under the second.

It would seem that there is room for the application of both of these principles in cases where the facts might give rise to one or to the other. Words spoken upon a privileged occasion which, of themselves, containing nothing that would go beyond the privilege may still be said with the deliberate purpose to do harm. By accent, intonation and manner a speaker may put into an otherwise excusable phrase, a venomous meaning that would rob him of the right to set up a privilege that otherwise might clearly cover and cloak his actual utterance. This, of course, would be the showing of actual malice. This would take away the protection afforded by the privilege, although the utterance itself falls clearly within it. On the other hand, granted a privileged occasion, words which, in themselves, and because of their subject matter might go clearly beyond the scope of utterances that the privilege would embrace, would be outside of and not at all covered by the privilege and would thereby come within the class of utterances upon which recovery might be had without the showing of actual malice. One element essential for the existence of the privilege having failed, the whole protection collapses as matter of defense, although the circumstances may mitigate damages.

The next question that we reach is that of whether the utterance made by Riley was legitimately within the scope of the occasion, that is to say, whether it exceeded the privilege by being outside its scope or by being, on its face, unnecessarily defamatory. He was undoubtedly investigating the circumstances of the injury for his company. He was

undoubtedly addressing persons who might be expected to have, directly or indirectly, knowledge concerning the circumstances of the injury. These things give rise to the privilege of the occasion. He undoubtedly was possessed of the information upon which he was justified in formulating a theory as to how the injury took place. He was seeking information to substantiate that theory or to disprove it. In order to do so, it would seem that the statement of that theory to others from whom such information might be sought would not be exceeding the reasonable and proper bounds of the inquiry. If that theory was, that the plaintiff had cut his fingers off purposely, Riley was justified in so stating. A reasonable inference from the proof is that Riley's statement purported to be nothing more than his own deduction from the facts reported to him. It was undoubtedly known to all of the witnesses to whom the statement was made or in whose presence it was made that Riley did not make it on the basis of facts within his own knowledge. When the occasion of the utterance is privileged, the courts incline to lenity in determining whether the words used come within the scope of the privilege. *Rigney* v. *Keesee & Co.*, 104 W. Va. 168, 173, 139 S. E. 650. It would seem, therefore, that the trial court should have found as a matter of law that the words were uttered upon a privileged occasion, and, further, that the words came within the scope of the privilege so established.

The privilege of the occasion having been determined to exist as a matter of law and the utterance having come within the scope of that privilege, also as a matter of law, leaves as the only question undetermined that of whether the words were maliciously uttered. If the case narrowed to this issue, it seems clear to us that the matter of malicious utterance should have been submitted to the jury on proper instructions of the court.

Subsequent utterance of the same or similar words having been shown as evidence of malice, the plaintiff was entitled to go to the jury on that question. *Swindell* v. *Harper*, 51 W. Va. 381, 41 S. E. 117; *Scott* v. *Times-Mirror Company*, 181 Cal. 345, 184 P. 672, 12 A. L. R. 1007, and note.

Defendant in error contends that the question of privilege was not raised in the trial court, and, therefore, should not be

entertained in this court as a cause of reversal. We cannot agree with this contention. Privilege may be proved under the general issue. *Johnson* v. *Brown,* 13 W. Va. 71; *Ward* v. *Ward,* 47 W. Va. 766, 35 S. E. 873; *Hancock* v. *Mitchell,* 83 W. Va. 156, 98 S. E. 65. It might well be that it could be shown by the proof and argued to the jury without an instruction by the court. The question could then be assigned upon motion to set aside the verdict, as was done in this case.

Owing to the considerations hereinbefore discussed, we are obliged to conclude that plaintiff's instruction No. 1, which ignores the element of malice, should not have been given, and that on this account, the case must be reversed and remanded for a new trial. Furthermore, although the instruction offered as defendant's No. 5 was not specific in dealing with privilege, it should have been modified and given. It is true that it does not specifically deal with the question of malice, as perhaps it should, but it nevertheless tells the jury that they should find for the defendant if they believe that the utterance was actuated solely as a part of the investigation being conducted by Riley. This, by necessary implication, excludes malice.

For the reasons given, as to W. F. Riley, the judgment of the circuit court of Wyoming County will be reversed, the verdict set aside, and the cause remanded for a new trial to accord with the principles herein laid down.

*Reversed and remanded.*