THE CITY OF MULLENS, *etc.*

*v.*

LOUIS HAYNES DAVIDSON, *et al.*

(No. 10154)

Submitted September 14, 1949. Decided December 20, 1949.

Lovins, Judge, not participating.

*Kingdon & Kingdon, Frederick T. Kingdon, for plaintiffs in error.*

*Jackson, Kelly, Morrison & Moxley, W. T. O'Farrell,* for defendants in error.

HAYMOND, PRESIDENT:

This action of assumpsit was instituted in the Circuit Court of Wyoming County by and in the names of the City of Mullens, a municipal corporation, and the State of West Virginia, as plaintiffs, for the use and benefit of Robert R. Jones, to recover from the defendants, Louis Haynes Davidson, as principal, and Fidelity and Casualty Company of New York, a corporation, as surety, damages for the alleged breach of an official bond executed by the defendants payable to the City of Mullens in the penalty of Thirty Five Hundred Dollars. The defendant Davidson, the principal in the bond, did not appear or defend the action in the trial court. The defendant, Fidelity and Casualty Company of New York, filed its written demurrer to the declaration and assigned numerous grounds of demurrer. The circuit court dismissed the State of West Virginia as a party, sustained the demurrer to the declaration as to the defendant Fidelity and Casualty Company of New York, and dismissed the action as to it. To that judgment this writ of error was granted upon the petition of the plaintiffs.

The declaration, which consists of a single count, alleges the appointment of Davidson as a police officer of the City of Mullens on May 23, 1946, for an indefinite term, the execution by the defendants, on June 25, 1946, of a bond payable to the City of Mullens in the penalty of Thirty Five Hundred Dollars conditioned that Davidson

should "faithfully perform such duties as may be imposed on him by law or by the Commissioners of said city during the said term of office," and that he did not perform, but defaulted in, the condition of the bond. It charges that Davidson, on March 2, 1948, while the bond was in force and effect, and while he was engaged in the discharge of the duty, imposed upon him as such officer by the City of Mullens, of inspecting parking meters maintained and operated in and by the city, under color of his office, came to the entrance of the Mullens Appliance Store, in the rear portion of which the relator was then engaged in selling goods to a customer, and, in a loud voice and in the presence and the hearing of divers citizens, maliciously, falsely and insultingly uttered and spoke these words: "What do you (meaning the said relator) mean breaking this parking meter (pointing to and meaning an automobile parking meter owned and operated by the City of Mullens, West Virginia, as aforesaid and situated on the street curb immediately in front of, and across the street from, said Mullens Appliance Store in said City of Mullens). You put a crooked penny (from its usual construction and common acceptation, meaning a 'slug' or other article capable of being issued, uttered and passed as an unlawful and illegal substitute for legal tender of the United States) in it (meaning thereby to charge relator with knowingly violating statutes of the United States making it unlawful to utter or pass counterfeits or other unlawful substitutes for legal tender of the United States) and broke it (meaning thereby to charge relator with the violation of an ordinance of the City of Mullens aforesaid as well as the violation of statutes of the State of West Virginia relating to the damaging of property of others). These meters cost the city (meaning the City of Mullens, West Virginia) $58.00."

The declaration also charges that the foregoing words were insults, were construed as such by Davidson and the persons who heard them, and were such as tend to violence and breach of the peace; that the act of Davidson, in uttering them, injured and damaged the relator in his

good name, fame and credit in the amount of Thirty Five Hundred Dollars; and that the foregoing act of Davidson constituted a breach of the condition of the bond.

In addition to the dismissal of the State of West Virginia as a party to this action, the circuit court, according to the opinion filed as part of the record, sustained the demurrer and dismissed this case as to the defendant, Fidelity and Casualty Company of New York, the surety, on the ground that the condition of the bond did not cover slander and, in consequence, the surety was not liable for the slanderous and insulting remarks of Davidson, the principal in the bond. This ruling of the court is assigned as error by the plaintiffs.

In support of the judgment of dismissal the surety contends: (1) The words uttered by the principal, Davidson, are not slanderous at common law or within the meaning of the statute; (2) the occasion of the utterance of the words in question was absolutely privileged; and (3) the bond does not cover the words uttered by the defendant Davidson.

Consideration should first be given to the ruling of the trial court in dismissing the State of West Virginia as a plaintiff in this action. The bond here in suit is an official bond of the defendant Davidson as a police officer of the municipality. Code, 1931, 6-2-2, provides that every official bond, and every bond required by law to be taken or approved by, or given before, any court, board or officer, shall, unless otherwise provided, be made payable to the State of West Virginia. A former statute, Section 5, Chapter 10, Code of 1913, which subsequently became Section 5, Chapter 10, Code of 1923, contained a provision that any bond to be given by an officer of a municipal corporation, county or district, or that could lawfully be prescribed by its ordinances, by-laws or regulations, could be made payable to the State of West Virginia or to the municipal corporation, the county, or the district.

In *State ex rel. County Court of Preston County* v. *Williams*, 115 W. Va. 204, 174 S. E. 873, this Court held that

an action upon the official bond of a sheriff, payable to the county and given when the statute just referred to was in force and effect, could not be maintained in the name of the State. In *State ex rel. McDermott* v. *United States Fidelity and Guaranty Company,* 85 W. Va. 720, 102 S. E. 683, the holding, with respect to a bond also executed while Section 5, Chapter 10, Code of 1913, was in force and effect, by a municipal police officer for carrying weapons, conditioned as prescribed by a statutory provision which is now incorporated in Section 2, Article 7, Chapter 61, of the Code of 1931, was that an action on such bond, payable to the municipality, could not be brought in the name of the State, but must be brought in the name of the municipality. Section 5, Chapter 10, Code of 1923, however, was omitted from the Code of 1931, and is not now in force in this State. Code, 1931, 6-2-11, relates to bonds of municipal officers, but that section does not expressly provide how or to whom such bonds shall be payable. The Revisers' Note to Code, 1931, 6-2-2, states that the purpose in requiring all bonds referred to in the section to be made payable to the State and in dispensing with the alternate provisions of Section 5, Chapter 10, Code of 1923, was to provide uniformity for all such bonds.

Though the bond here in suit does not comply with the foregoing requirement of Code, 1931, 6-2-2, it is not invalid for that reason. See *Municipality of Cowen ex rel. Proudfoot* v. *Greathouse,* 130 W. Va. 587, 45 S. E. 2d 489. In that case this Court held that an action by the municipality could be maintained upon a written obligation entered into as a statutory bond which did not bear a seal, but which possessed all the essential elements of a binding contract. As the bond in this case was expressly made payable to the City of Mullens, as obligee, this action may be maintained in its name. See *State ex rel. McDermott* v. *United States Fidelity and Guaranty Company,* 85 W. Va. 720, 102 S. E. 683; *Town of Lester* v. *Trail,* 85 W. Va. 386, 101 S. E. 732. In an action in the name of the State upon an official bond payable to the State of West Virginia, it sues in a representative capacity as trustee and

as the obligee for the use of any and all persons who might be injuriously affected by the breach of the bond; and as the bond in this case is not payable to the State but to the City of Mullens, no contractual relation exists between the State and the obligors. Code, 1931, 6-2-17, which provides that upon any bond payable to the State of West Virginia a suit may be prosecuted in the name of the State, applies only to actions at law upon bonds payable to the State and not to an action upon a bond in which the State is not the obligee. See *Hensley* v. *Copley,* 122 W. Va. 621, 11 S. E. 2d 755; *Moore* v. *Henry,* 76 W. Va. 271, 85 S. E. 527; *State ex rel. County Court of Preston County* v. *Williams,* 115 W. Va. 204, 174 S. E. 873; *State* v. *Flanagan,* 77 W. Va. 505, 87 S. E. 878. In consequence, the exercise, by the trial court, of its statutory authority under Code, 1931, 56-4-34, in dismissing the State of West Virginia as a party to this action because of the misjoinder of the plaintiffs was in all respects correct and proper.

The statute which makes actionable all words which from their usual acceptation are construed as insults and tend to violence and breach of the peace, Code, 1931, 55-7-2, provides that "No demurrer shall preclude a jury from passing thereon." Though this Court held in *Parker* v. *Appalachian Electric Power Company,* 126 W. Va. 666, 30 S. E. 2d 1, that when it appears from the allegations of a declaration in an action of trespass on the case for libel that the defendant has not exceeded or abused a conditionally privileged occasion upon which the alleged libel was written and that, unexplained by innuendoes, the writing contains no libelous statements, a demurrer to the declaration should be sustained, this Court has also held that, by force of the statute, no demurrer in an action for statutory slander can prevent a jury from passing upon the words uttered and that whether those words are an insult must be left to the jury. *Poling* v. *Pickens,* 70 W. Va. 117, 73 S. E. 251, Ann. Cas. 1913D, 995. See *Barger* v. *Hood,* 87 W. Va. 78, 104 S. E. 280. The marked difference in the character of the privileged communication under consideration in the *Parker* case from that of the utter-

ances involved in the *Poling* case indicates the distinction between those cases; and the character of the communication dealt with in the *Parker* case also distinguishes that case from the case at bar. It can not be said of the declaration in this case, as was said of the declaration in the *Parker* case, that the words used, unexplained by the innuendoes, are not slanderous or insulting, or that the declaration does not set forth a state of facts which justifies the meaning of the words as explained by the innuendoes. The inhibition of the statute operates to deprive the court of the power to entertain or sustain a demurrer to the declaration in this case upon any ground involving a construction of the language used; and the rule adopted and enforced in the *Poling* case, and recognized in the *Barger* case, is now adhered to and applied.

On the ground of public policy, certain communications are recognized as privileged and, in the law of libel and slander, a privileged communication is a communication which would be defamatory and actionable, except for the occasion on which, or the circumstances under which, it is made. The privilege may be either absolute or qualified or conditional. 33 Am. Jur., Libel and Slander, Section 124. In 53 C. J. S., Libel and Slander, Section 87, this statement appears: "In cases of absolutely privileged communications, the occasion is an absolute bar to the action; whereas, in cases of conditionally or qualifiedly privileged communications, the law raises only a prima facie presumption in favor of the occasion. In the former class the freedom from liability is said to be absolute or without condition, regardless of the existence of express malice, as contrasted with such freedom in the latter class where it is said to be conditioned on the want or absence of express malice." "An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously." 33 Am. Jur., Libel and Slander, Section 125.

See 53, C. J. S., Libel and Slander, Section 88. "Briefly stated, a qualifiedly privileged communication is a defamatory communication made on what is called an occasion of privilege without actual malice, and as to such communications there is no civil liability." 53 C. J. S., Libel and Slander, Section 89. See 33 Am. Jur., Libel and Slander, Section 126. As to absolutely privileged communications, it is said that such communications are practically limited to legislative and judicial proceedings and other acts of the State. 33 Am. Jur., Libel and Slander, Section 125. This Court recognized the principle just stated in *Parker* v. *Appalachian Electric Power Company*, 126 W. Va. 666, 30 S. E. 2d 1, and in the opinion said: "With a few exceptions not necessary to mention, absolutely privileged communications are limited to legislative, judicial and quasi-judicial proceedings and other acts of the State." Obviously the statements or the communications of a municipal police officer are not within any category covered by the foregoing rule.

As to a qualifiedly or conditionally privileged communication, the opinion in a leading case states that "a communication made in the discharge of a duty, and looking to the prevention of wrong towards another or the public, is so privileged when made in good faith." *Missouri Pac. Ry. Co.* v. *Richmond*, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794. With respect to the character of the privilege, some authorities recognize a distinction between the statement of a law enforcement officer and the statement of a private citizen, and "in some states communications of the former are regarded as absolutely privileged, although in others the privilege is held to be only a qualified one." 33 Am. Jur., Libel and Slander, Section 137. "The existence or nonexistence of a qualifiedly privileged occasion, and whether the privilege has been exceeded in the absence of a controversy as to facts, are questions of law for the court." Point 3, Syllabus, *Swearingen* v. *The Parkersburg Sentinel Company*, 125 W. Va. 731, 26 S. E. 2d 209. See also *Ward* v. *Ward*, 47 W. Va. 766, 35 S. E. 873; *Higgins* v. *Williams Pocahontas Coal*

*Company,* 103 W. Va. 504, 138 S. E. 112; *Stewart* v. *Riley,* 114 W. Va. 578, 172 S. E. 791.

In the light of the principles heretofore stated, consideration of the material facts alleged in the declaration justifies the conclusion that the statement of the defendant Davidson, as a law enforcement officer, made under color of his office while he was engaged in the discharge of a duty imposed upon him by the city, was not an absolutely privileged communication but a qualifiedly privileged communication and that the qualified or conditional privilege was exceeded or defeated by actual malice existing when the words charged against him were spoken. See 53 C. J. S., Libel and Slander, Section 100. As he was a municipal police officer and not a legislative or judicial officer or an officer acting for the State in the discharge of his duties in behalf of the municipality, it is manifest that he was not within the rule, recognized in the *Parker* case, which in general limits absolutely privileged communications to legislative, judicial and quasi-judicial proceedings and other acts of the State, when he uttered the words charged against him, and that the words can not be placed in the class of absolutely privileged communications. With respect to the manner in which the words were uttered by Davidson, the declaration charges that they were "maliciously, falsely and insultingly spoken and published of and concerning the relator," and this material fact and all other material facts sufficiently pleaded in the declaration must be considered as true upon demurrer. *Evans* v. *Charles,* 133 W. Va. 463, 56 S. E. 2d 880; *Ross* v. *Midelburg,* 129 W. Va. 851, 42 S. E. 2d 185; *Taylor* v. *Spurr,* 126 W. Va. 773, 30 S. E. 2d 84; *Browning* v. *Browning,* 85 W. Va. 46, 100 S. E. 860. In an action for slander, when the occasion on which the words were uttered was not absolutely privileged, but only qualifiedly privileged, the burden of proving actual malice to defeat the privilege lies on the plaintiff. *Ward* v. *Ward,* 47 W. Va. 766, 35 S. E. 873; *Rigney* v. *W. R. Keesee and Company,* 104 W. Va. 168, 139 S. E. 650, 54 A. L. R. 1139; *Swearingen* v. *The Parkersburg Sentinel Company,* 125 W. Va. 731,

26 S. E. 2d 209. The rule just stated, however, has no application in the present status of this case, for the reason that no controverted issue of fact with respect to the acts laid to the defendants has yet been raised by any plea; but upon a hearing of factual issues, the existence of actual malice is for the jury. *Ward* v. *Ward*, 47 W. Va. 766, 35 S. E. 873; *Higgins* v. *Williams Pocahontas Coal Company*, 103 W. Va. 504, 138 S. E. 112; *Stewart* v. *Riley*, 114 W. Va. 578, 172 S. E. 791; *Swearingen* v. *The Parkersburg Sentinel Company*, 125 W. Va. 731, 26 S. E. 2d 209. As the allegations of the declaration set forth words which were not absolutely, but only qualifiedly, privileged, and charge that they were uttered with malice, the declaration is not subject to demurrer on the ground that the occasion on which they were uttered was either absolutely or qualifiedly privileged.

The remaining question to be considered and determined is whether the condition of the bond extends to and covers the alleged defamatory words of the principal and imposes liability for breach of the bond upon the surety by reason of the act of the principal in uttering them.

The doctrine of *strictissimi juris* does not apply to a corporation organized to enter into bonds or other contracts for profit. Such a corporation, in acting as surety on a bond, for which it receives compensation, is regarded in law as an insurer; and, as a bond executed by a surety for compensation is usually expressed in terms prescribed by the surety, it will for that reason be strictly construed in favor of the obligee. *State ex rel. City of Beckley* v. *Roberts*, 129 W. Va. 539, 40 S. E. 2d 841; *Mills* v. *Indemnity Insurance Company of North America*, 114 W. Va. 263, 171 S. E. 532; *Hicks* v. *Randich*, 106 W. Va. 109, 144 S. E. 887; *Board of Commissioners of Ohio County* v. *Clemens*, 85 W. Va. 11, 100 S. E. 680, 7 A. L. R. 373. As already pointed out, the declaration alleges that Davidson maliciously uttered the slanderous words while engaged in the discharge of a specified duty imposed upon him by the City of Mullens as a police officer of the municipality, under

color of his office. This Court has repeatedly held that a surety upon the official bond of an officer, conditioned for the faithful performance of his duties, is liable for his wrongful act committed by virtue or under color of his office. *State ex rel. City of Beckley* v. *Roberts,* 129 W. Va. 539, 40 S. E. 2d 841; *Booten* v. *Napier,* 121 W. Va. 548, 5 S. E. 2d 441; *State ex rel. Verdis* v. *Fidelity and Casualty Company of New York,* 120 W. Va. 593, 199 S. E. 884; *Village of Barboursville ex rel. Bates* v. *Taylor,* 115 W. Va. 4, 174 S. E. 485, 92 A. L. R. 1093; *Wheeling* v. *Black,* 25 W. Va. 266; *Lucas* v. *Locke,* 11 W. Va. 81.

Though no case has been found by, or brought to the attention of, this Court involving the question of the liability of a surety upon an official bond for the defamatory utterances of the principal while acting by virtue or under color of his office, other than the Indiana case of *State ex rel. Bruns* v. *Clausmeier,* 154 Ind. 599, 57 N. E. 541, 50 L. R. A. 73, 77 Am. St. Rep. 511, cited and relied upon by the surety, no sufficient reason exists, in law or in logic, to differentiate the utterance of scandalous words or the publication of scandalous matter from any other wrongful act committed by the principal by virtue or under color of his office, or to relieve the surety from liability for the scandalous utterances of the principal and to impose liability upon the surety for other wrongful acts of the principal when each of the acts is committed by virtue or under color of his office. Liability of the surety upon the official bond of a sheriff, for the acts of the principal in publishing the picture and a description of a person arrested by him, who was later acquitted of the offense with which he was charged, was denied in the *Clausmeier* case on the apparent ground that the sheriff, in circulating the picture and the description of the accused, was not acting by virtue or under color of his office and that, for that reason, there was no liability on his official bond. The declaration in this action, as previously pointed out, expressly charges that the acts complained of were performed by Davidson under color of his office; and for that reason the *Clausmeier* case may be distinguished from the case at

bar. If it is not thus distinguishable, the *Clausmeier* case is not in accord with the decisions of this Court in *Booten* v. *Napier,* 121 W. Va. 548, 5 S. E. 2d 441, and in other cited cases which hold the principal and the surety liable on the official bond of an officer for his wrongful act committed by virtue or under color of his office. Of course the surety on an official bond is not liable for the acts of the principal which are not done by virtue or under color of his office. *Booten* v. *Napier,* 121 W. Va. 548, 5 S. E. 2d 441.

In *State ex rel. Verdis* v. *Fidelity and Casualty Company of New York,* 120 W. Va. 593, 199 S. E. 884, this Court said: "The declaration in this case charges that the said Williams made the arrest 'under color of the authority by virtue of his office as said constable.' A distinction seems to be recognized between an act done by virtue of an office and one done under color of office, but in either case the surety is liable for the acts of its principal." And in the later case of *Booten* v. *Napier,* 121 W. Va. 548, 5 S. E. 2d 441, this language was used: "It is true, of course, that the surety on an official bond is not liable for the private conduct of the official, clearly outside the scope of his office, but in the case under consideration, Napier was assuming to act as a deputy sheriff, and within the general scope of his official duties, and in arresting Cunningham without a warrant and for a misdemeanor not committed in his presence, he subjected himself to liability for damages for the consequences of his act. We hold that any official who assumes to act as such, and who acts within the general scope of the powers and duties of his position, acts under color of office, even though his act is one beyond his actual legal authority, and that he and his surety on his bond are liable therefor. To hold otherwise would be to clothe men with the authority of the state, and permit them, under such authority, to invade the rights of citizens, and then defend, so far as their official bond is involved, on the ground that they overstepped and abused the authority entrusted to them by the state. The bond in the case at bar stipulates that the principal therein

would 'well and truly perform the duties of his said office' and, in our opinion, it was breached, when, under the assumed power and authority of his office, he committed an unlawful act to the injury of the plaintiff."

The allegations of the declaration in this case bring the conduct of the principal in the bond sued on within the rule, which imposes liability upon the surety for the wrongful act of the principal, recognized and applied in the cited decisions of this Court. In consequence the circuit court should not have sustained the demurrer to the declaration on the ground that the condition of the bond did not cover the alleged slanderous utterances of the principal in the face of the positive allegation that they were committed by him under color of his office; and its action in sustaining the demurrer and in dismissing this case as to the surety constituted reversible error.

For the reasons stated the judgment is reversed and this action is remanded for further proceedings in conformity to the principles stated in this opinion.

*Reversed and remanded*
*with directions.*