**William R. PORTER, Appellant,**

v.

**J. A. EYSTER, Appellee.**

**No. 8261.**

United States Court of Appeals
Fourth Circuit.

Argued June 12, 1961.

Decided Sept. 15, 1961.

Charles N. Ford, Washington, D. C., for appellant.

Clarence E. Martin, Jr., Martinsburg, W. Va. (Martin & Seibert, Martinsburg, W. Va., on the brief), for appellee.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

SOPER, Circuit Judge.

This appeal is taken from a summary judgment whereby a suit for libel under the common law and for the use of insulting words under Section 5471 of Article 7 of the West Virginia code, Code, 55–7–2, instituted by William R. Porter of Virginia v. J. A. Eyster of West Virginia, was dismissed. The plaintiff claimed damages in the sum of $150,000, and jurisdiction was based on diversity of citizenship.

The defendant's motion for summary judgment was considered by the District Judge on the basis of the pleadings and a deposition of the plaintiff taken and filed by the defendant. The plaintiff,

William R. Porter, is a doctor of veterinary medicine who has practiced in Maryland, Virginia and West Virginia since 1948. In July 1958, having been examined and certified as qualified to practice his profession generally in West Virginia, he began attending horses at the Charles Town Race Course in that state. On August 1, 1958 he was so engaged in the stable area of the track at the request of certain owners or trainers of horses and was carrying a black leather bag containing among other things hypodermic needles, syringes and various stimulating drugs. He was approached by a member of the police organization employed by the management of the track and requested to accompany him to the office of the Board of Stewards. This body had been appointed by the West Virginia Racing Commission under the power conferred upon it by Section 2200(2), Article 23, Chapter 19 of the West Virginia Code of 1955, as amended in 1957. This statute conferred upon the Racing Commission the power to appoint a secretary and steward and such additional persons as should be reasonably necessary to represent the Commission in the administration of the business of the track. The Racing Commission, itself, consisting of three members appointed by the Governor of the State, was a body corporate clothed by the statute with power to carry out the purposes of the act and to prescribe regulations under which all races in West Virginia should be conducted. The Racing Commission was also empowered to remove any racing official or any racing employee of a licensee for violation of its regulations or for any fraudulent practice.

The defendant, J. A. Eyster, was the Chairman of the Board of Stewards appointed by the Racing Commission to operate the Charles Town Race Track at the time the plaintiff was brought before the Board. He then exhibited to the Board his registration card certifying that he was entitled to practice in West Virginia and granted permission to the members of the Board to examine and analyze the contents of his bag. He

stated, however, that he was not acquainted with Rule 172 which had been promulgated by the Racing Commission, and which provided that any person acting in the capacity of a veterinarian at any race track bound by the Commission should procure a license from the Commission and pay a license fee of $10.00. Rule 172 also provided that all applicants for licenses should present their application to the Stewards, and further provided that no trainer should hire any person required to have a license unless such person had in fact been licensed by the Stewards.

The plaintiff was also ignorant of the provisions of Rule 267 which had been promulgated by the Commission with respect to the possession by any person on the grounds of a racing association of any hypodermic syringe, hypodermic needle or other device which could be used for the injection into a horse of a drug or stimulant without first securing written permission from the Stewards. This rule not only forbids any person to possess such articles which may be used to affect the speed or actions of a horse but gives the Racing Association, the Commission and the Stewards the right to enter into any building on the grounds of the track and examine personal effects and property of any person thereon, and further provides that if the Stewards shall find that any person has violated the rule they shall impose such penalty and take such action as they may deem proper. Rule 287 of the Racing Commission expressly gives the Stewards the power to suspend or exclude improper and objectionable person from the stands and grounds of a race track in the state.

After the plaintiff had appeared before the Board of Stewards and admitted that he had not paid the license fee of $10.00, and that he had hypodermic needles and drugs in his possession at the track without the Board's permission, the Board, on August 7, 1958, made the following ruling in writing and caused it to be posted on the public bulletin board of the track maintained for the purpose of con-

veying information to racing personnel. This statement was as follows:

"Dr. William R. Porter, veterinarian of Berryville, Virginia, is hereby ruled off these premises for acting in capacity of a veterinarian on the grounds of the Charles Town Race Course without proper license and in violation of Rule No. 172 of the West Virginia Racing Commission; and also for having in his possession on said premises, drugs, stimulants, hypodermic syringes and needles without permission of the Stewards and in violation of Rule No. 267 of the West Virginia Racing Commission."

This ruling was subsequently published in the Daily Racing Form and the Morning Telegraph which cater to the racing public, and also in the Washington newspapers generally circulated in Virginia and West Virginia where Dr. Porter practiced his present profession. The plaintiff alleged in his complaint that in consequence of these publications his local practice was virtually destroyed and he was forced to become a roving practitioner at various racing meets principally in Maryland, thereby suffering serious loss and injury. Subsequently, on August 29, 1958, the West Virginia Racing Commission issued to the plaintiff a special license to practice at all the West Virginia race tracks and terminated the ruling of the Board of Stewards at Charles Town ruling him off the race course.

This factual situation was set forth in a pre-trial order and is not disputed. The District Judge reached the conclusion that the ruling of the Board of Stewards, excluding the plaintiff from the track for his failure to have a special license to practice thereon and for having drugs and stimulants in his possession without permission of the Stewards, was an absolutely privileged communication which did not constitute a basis for an action of libel or for the use of insulting words under the state statute. Accordingly, he granted a motion of the defendant for a summary judgment and dismissed the suit.

On this appeal the plaintiff contends, (1) that the Stewards did not possess an absolute privilege but only a qualified privilege in making the publication since they were only minor officials to whom the West Virginia Racing Commission had no power to delegate the judicial or quasi-judicial power conferred upon the Commission by state statute; and (2) that the defendant was not protected by the qualified privilege since the Stewards lost the protection of the privilege by giving unnecessary publicity to their ruling. The plaintiff also contends (3) that the District Judge erred in not submitting to the jury the question whether the defendant was actuated by malice in participating in the allegedly excessive publication of the notice whereby the professional standing and reputation of the plaintiff was seriously impaired.

██ The decisions of the Supreme Court of West Virginia, which are controlling in this case, are in accord with the rulings generally applicable to privileged communications. In City of Mullins v. Davidson, 133 W.Va. 557, 57 S.E.2d 1, 13 A.L.R.2d 887, the court, citing with approval 33 Am.Jur., Libel and Slander, Sections 124–127, held that the absolute privilege which protects one who issues a defamatory communication is practically limited to legislative, judicial and quasi-judicial proceedings and other acts of the State. See also State ex rel. Spiker v. West Virginia Racing Commission, 135 W.Va. 512, 63 S.E.2d 831; Stewart v. Riley, 114 W.Va. 578, 172 S.E. 791.

The claim of the defendant to the protection of absolute privilege in this case was sustained by the District Judge under the authority of the statutes of West Virginia establishing the Racing Commission and defining its power and under the authority of the decisions of the Supreme Court of the State. The Commission's powers which are relevant to the facts of this case are set forth in the following excerpts from Sections 1 and 2 of

Article 23, Chapter 19, of the West Virginia Code. Section 1 provides, in part:

"Said commission shall have all the powers necessary to carry out fully and effectively all the purposes of this article, and shall have the power to prescribe reasonable regulations under which all races shall be conducted within the state of West Virginia except as hereinafter provided. The commission may at any time, for the violation of any such regulation, or for any fraudulent practices, require the removal of any racing official or racing employee employed by any licensee licensed hereunder; and shall have power to summon witnesses and to administer oaths or affirmations to such witnesses and take testimony whenever in the judgment of said commission it may be necessary for the discharge of its duties."

Section 2 provides, in part, as follows:

"The commission shall, under the restrictions and within the qualifications hereinafter set forth, appoint a secretary and steward, to represent the commission, and such additional help as shall be reasonably necessary to administer the provisions of this article, and shall, within the limits prescribed by the legislature, fix their compensation and actual expenses."

■ The Supreme Court of the state had occasion to consider this statute in State ex. rel. Morris v. West Virginia Racing Commission, 133 W.Va. 179, 55 S.E.2d 263, and reached the conclusion that the grant of power to the Racing Commission to regulate horse racing in the state was a valid delegation of legislative power and that a rule of the commission making a trainer of horses an insurer of the condition of a horse entered in a race was a valid exercise of the police power. It is obvious that the provision of the statute conferring upon the Commission the right to exercise quasi-judicial power in the enforcement of its regulations was also a proper exercise of the legislative power of the state.

■ The plaintiff, however, makes the point that the absolute privilege covering the Commission does not extend to inferior officers and boards and that, in the performance of their duties, they are only entitled to the protection of a qualified privilege. It was so held in City of Mullins v. Davidson, 133 W.Va. 557, 57 S.E.2d 1, 13 A.L.R.2d 887, in respect to the statement of a policeman who accused a citizen of illegal conduct, and in Colpoys v. Gates, 73 App.D.C. 193, 118 F.2d 16, with respect to the statement of a United States Marshal in explanation of the dismissal of certain deputies. The plaintiff contends that the Board of Stewards in this case falls into the same category. We disagree. It was held in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, that the issuance of a press release by the director of the Office of Rent Stabilization of the United States, announcing the suspension of subordinate employees for misuse of the funds of the agency, was absolutely privileged. The court declared (360 U.S. at page 573, 79 S.Ct. at page 1340) that although the protection afforded to the head of an executive department is far broader than in the case of a minor official, it is not the title of the office but the duties with which the particular official is entrusted that determines the extent of the immunity from suit for civil defamation.

■■ The plaintiff concedes that the statute confers quasi-judicial power upon the Racing Commission but contends that the Board of Stewards did not and could not possess such power because of a provision in the statute creating the commission, which expressly prohibits the commission from delegating its power to anyone else. This contention is based upon a provision in section 2(d) of the statute which provides among other things that "no person shall knowingly be employed by the commission in any capacity whatsoever who shall * * * in any manner have delegated to him the duties and powers of the members of the commission, as director or supervisor of racing, or in any other manner or capacity whatsoever." This seemingly sweeping pro-

vision, however, must be considered in connection with the prior language of the section which expressly gives to the commission the power to appoint a secretary and steward to represent the commission and such additional help as shall be reasonably necessary to administer the provisions of the article. Accordingly, under this grant of power as well as the power to promulgate regulations, the Commission conferred upon the Stewards by Rule No. 267 the right to enter upon any building or place on the grounds of the Racing Association and to examine the same and to search for and seize any devices, drugs or stimulants designed to affect the speed of horses and also gave the Stewards power to impose a penalty and take such other actions as they might deem proper under the rules of racing including, under rule 287, the power to exclude objectionable and improper persons from the stands and grounds of a race track. Taking the whole statute into consideration, the District Judge overruled the plaintiff's contention. He pointed out that the provisions of the statute forbidding the Commission to delegate its powers related primarily to those of a directory or supervisory character and he emphasized the impracticability of requiring the members of the Commission to give their personal attention to the many situations that arise during every racing meeting, especially the presence of unauthorized persons in restricted areas as well as the need constantly to protect the interests of the public. We are in accord with this conclusion in the absence of any authoritative interpretation of the statute by the Supreme Court of the state on this point. We hold that the public notice with respect to the plaintiff posted upon the bulletin board at the track was absolutely privileged and cannot form the basis of the present suit.

We proceed, however, also to consider the liability of the defendant on the theory that he was entitled only to a qualified privilege since the Supreme Court of West Virginia has not yet decided whether the Racing Commission was authorized to delegate its judicial power to the Board of Stewards. On this phase of the case the plaintiff does not contend that the Board of Stewards exceeded its authority in making the ruling excluding him from the track and does not charge that any misstatement of fact was made in the notice posted on the bulletin board. His complaint is that the Stewards exceeded their authority by posting the notice in a public place, knowing that it would be brought to the attention of persons who had no legitimate interest in the business, and knowing also that the notice would probably be published, as indeed it was, in newspapers of general circulation, thereby subjecting the plaintiff to the suspicion that he was practicing illegally on the race track and engaged in reprehensible conduct. It is said that private communications to the owners and trainers of horses and other track personnel would have given sufficient information to the persons concerned.

■ The general rule prevailing in West Virginia and elsewhere is that one who has a qualified privilege to publish a defamatory statement must take care to limit the publication to the parties to whom he owes a duty or to parties who may be concerned with him in the protection of a legitimate interest. Barger v. Hood, 87 W.Va. 78, 104 S.E. 280; Rigney v. W. R. Keesee & Co., 104 W.Va. 168, 139 S.E. 650, 54 A.L.R. 1139; Stewart v. Riley, 114 W.Va. 578, 172 S.E. 791; Swearingen v. Parkersburg Sentinel Co., 125 W.Va. 731, 26 S.E.2d 209; England v. Daily Gazette Co., 143 W.Va. 700, 104 S.E.2d 306; Restatement of Torts, § 604.

■ These authorities hold that questions which arise in regard to the existence of the qualified privilege and to its abuse by excessive publication are for the court where there is no dispute as to the facts. Under this rule if only one conclusion can reasonably be drawn from the facts the jury is not called on to decide whether the conditional privilege has been exceeded or abused.

We think, as did the District Judge, that in this case the publication was not excessive and, hence, there was no abuse of the privilege. Communication of the facts that the plaintiff was not entitled to practice veterinary medicine on the track and that he had violated the prohibition against the possession of drugs and stimulants on the track was a necessary and proper step to inform the owners and trainers of horses as well as the other numerous personnel then engaged in the business of racing at the track. It was also a necessary precaution to take for the protection of the public interest. The bulletin board used was the normal place to disseminate the information to the parties concerned and if it happened incidentally in the course of the employment of this procedure that other persons gained knowledge of the facts, the protection of the qualified privilege was not lost. It has been held in a number of cases that the publication of defamatory information in trade journals and other special publications devoted to the promotion of a special interest falls within the qualified privilege if there is no distortion of the facts. Restatement of Torts, § 604, Comment (b).

The plan suggested by the plaintiff that the Stewards should have sent private letters to each one of the group occupied in racing activities on the track was obviously not practicable. Had this plan been followed the information would have been upon the lips of a great number of people and the same probability that it would find its way into the daily newspapers would have existed. We are of the opinion that there was no abuse of the privilege in this case; and since, in the absence of excessive publication, there was no evidence of improper conduct or malice on the part of the defendant there was nothing to submit to the jury and the summary judgment dismissing this suit was correct. See Swearingen v. Parkersburg Sentinel Co., 125 W.Va. 731, 26 S.E. 2d 209.

Affirmed.